CHARLES J. McCARTHY, by his next friend, *vs.* SECOND PARISH
IN THE TOWN OF PORTLAND.

Cumberland.    Opinion August 4, 1880.

*Negligence.    Master and servant.    Independent business.    Slater.*

The employment of one who carries on an independent business, and who, in
doing his work, does not act under the direction and control of his employer,
but determines for himself in what manner it shall be carried on, does not
create the relation of master and servant; and the employer would not be
responsible for the negligence of a person thus employed nor that of his
servants.

A slater by trade, who carried on the business of slater in Portland and had
done so for more than twenty years, keeping a shop, and a slate on which
to receive orders, and men constantly in his employ to assist in executing
such orders as he should receive, was held to be carrying on what the law
denominates an independent business.

ON MOTION AND EXCEPTIONS from the superior court, Cumberland county.

The verdict was for $3000.

The facts appear in the opinion.

*Nathan & Henry B. Cleaves*, for the plaintiff.

The *law* of the case is now well settled.

"The question in these cases, whether the relation be that of
master and servant, or not, is determined mainly by ascertaining from the contract of employment whether the employer
retains the power of directing and controlling the work or has
given it to the contractor." *Forsyth* v. *Hooper et als.* 11 Allen,
422; *Hilliard* v. *Richardson*, 3 Gray, 349; *Linton* v. *Smith*,
8 Gray, 147.

The true principle governing these cases is very clearly defined
in Sherman on Negligence, § 77, page 86.

The power to control the work, and the manner of its execution,
is the guiding principle in cases of this kind. *Peck* v. *Mayor
et als.* 8 N. Y. 222; *Kelley* v. *same*, 11 N. Y. 432; reversing
S. C. 4 E. D. Smith, 291.

The case of *Brackett* v. *Lubke el al.* 4 Allen, 139, is so directly in point, that the court will pardon us for referring to it with unusual particularity.

A carpenter was employed by the lessee of a building on Washington street, Boston, to repair an awning. He was told, as in the case at bar, what was wanted, without further directions, and neither the owner or lessee was present at the time the work was done. The carpenter received thirty-eight cents for the work. While the repairing was going on, a portion of the awning fell upon the head of a passer by. Suit for damages was brought against the lessee and a verdict rendered for plaintiff, and the defendants alleged exceptions.

The court says, BIGELOW, C. J. :

"This seems to us to be a very clear case. The defendants are liable, because it appears that the negligent act which caused the injury was done by a person who sustained towards them the relation of servant. There was no contract to do a certain specified job or piece of work in a particular way for a stipulated sum. It is the ordinary case where a person was employed to perform a service for a reasonable compensation. The defendants retained the power of controlling the work. They might have directed the time and manner of doing it. If it was unsafe to make the repairs at an hour when the street was frequented by passers, it was competent for the defendants to require the person employed to desist from work until this danger ceased or was diminished. . . The defendants were bound to see that in removing or altering a portion of the awning over the street no injury should be occasioned to travelers."

If a servant employs another to assist in his master's business, and the person so employed is guilty of negligence therein, the master is liable. *Suidam* v. *Moore*, 8 Barb. 358 ; *Althorf, Adm'r*, v. *Wolfe*, 22 N. Y. 355.

"The fact that there is an intermediate party, in whose general employment the person whose acts are in question, is engaged, does not prevent the principal from being held liable for the negligent conduct of the under-servant, unless the relation of such intermediate party to the subject matter of the business in

which the under-servant is engaged, be such as to give him exclusive control of the means and manner of its accomplishment, and exclusive direction of the persons employed therefor." *Kimball* v. *Cushman,* 103 Mass. 198.

*W. W. Thomas, Jr.* and *George E. Bird,* for the defendants, cited: *Peachey* v. *Rowland,* 13 C. B. (76 E. C. L.) 182; *Roberts* v. *Plaisted,* 63 Maine, 335; *Sadler* v. *Henlock,* 4 El. & Bl. 578; Wood on Master and Servant, p. 620; *Corbin* v. *American Mills,* 27 Conn. 274; *Reedie & Hobbit* v. *London & N. W. R. R. Co.* 4 Websly, H. & G. 256; *Eaton* v. *E. & N. A. R. R. Co.* 59 Maine, 531; *Quarman* v. *Burnett,* 6 M. & W. 497 (1840); *Laugher* v. *Pointer,* 5 B. & C. 554; *Blake* v. *Ferris,* 5 N. Y. 48; *Milligan* v. *Wedge,* 12 Ad. & El. 177 (1840); *Allen* v. *Hayward,* 7 Ad. & El. N. S. 960; *Butler* v. *Hunter,* 7 H. & N. 826; *Steel* v. *S. E. R. R.* 81 E. C. L. 550; *Murray* v. *Currie,* 6 C. P. (Law Rep.) 24; *Gaylord* v. *Nichols,* 9 Exch. 702; *Blake* v. *Ferris,* 1 Seld. 48; *Park* v. *Mayor,* &c. New York, 8 N. Y. 226, 227; *McMullin* v. *Hoyt,* 2 Daly, 271; *DeForrest* v. *Wright,* 2 Mich. 370; *Kellogg* v. *Payne,* 21 Iowa, 575; *Clark* v. *V. & C. R. R.* 28 Vt. 103; *Schwartz* v. *Gilmore,* 45 Ill. 455; *Painter* v. *Pittsburg,* 46 Pa. St. 213; *Ardesco Oil Co.* v. *Gilson,* 63 *Ib.* 146; 82 Pa. St; *Boniface* v. *Relyea,* 5 Abb. (N. S.) 259; *Du Pratt* v. *Lick,* 38 Cal. 691, cited in Wh. on Neg. § 181, note 4; Sh. and Red. on Negligence, § § 76, 79; *Corbin* v. *American Mills,* 27 Conn. 274; *Burke* v. *N. & W. R. R. Co.* 34 *Ibid.* 474.

The following, apparently in conflict with the authorities cited, have been overruled, or apply to facts altogether different from the case at bar, or are by courts holding to a different rule than that adopted by this court. *Cush* v. *Steinman,* 1 B. & P. 400; *Randleson* v. *Murray,* 8 Ad. & El. 109; *Rapson* v. *Cubitt,* 9 M. & W. 710; *Hilliard* v. *Richardson,* 3 Gray, 362; *Conners* v. *Hennessey,* 112 Mass. 98; *Clapp* v. *Kemp,* 122 Mass. 481; *Earle* v. *Hall,* 2 Met. 358; *Burgess* v. *Gray,* 1 C. B. 578; *Sadler* v. *Henlock,* 4 El. &. Bl. 570; *Pickard* v. *Smith,* 10 C. B. 470; *McCleary* v. *Kent,* 3 Duer, 27; *Smith* v. *Milne,* 2 Dow, 290.

WALTON, J.  Some men at work upon the roof of the Second Parish church in Portland, carelessly allowed a ladder in use by them to be blown down by the wind, and it fell upon the plaintiff and injured him.  The question is whether the parish is responsible for the injury.  We think not.  True, the law makes a master responsible for the negligence of his servant, but the employment of one who carries on an independent business, and in doing his work does not act under the direction and control of his employer but determines for himself in what manner it shall be carried on, does not create the relation of master and servant, and this responsibility does not attach.

The general rule, says Judge Thomas, in *Linton* v. *Smith*, 8 Gray, 147, is that, he who does the injury must respond; that the well known exception is that, the master shall be responsible for the doings of the servant whom he selects, and through whom, in legal contemplation, he acts; but when the person employed is in the exercise of a distinct and independent employment, and not under the immediate supervision and control of the employer, the relation of master and servant does not exist, and the liability of a master for his servant does not attach.

In *DeForrest* v. *Wright*, 2 Mich. 368, the court say that where an employee is exercising a distinct and independent employment, and is not under the immediate control, direction, or supervision of the employer, the latter is not responsible for his employee's negligence.  In that case a drayman was employed to haul a quantity of salt from a warehouse, and deliver it at the store of the employer at so much per barrel, and while in the act of delivering the salt, one of the barrels, through the carelessness of the drayman, rolled against the plaintiff and injured him, as he was passing upon the sidewalk, and it was held that the employer was not liable for the injury.  In another case in the same volume, *Moore* v. *Sanborne*, 2 Mich. 519, the court held that where one was employed to cut and haul all the logs on certain land of the employer, and deliver them at a place named, the employer to have nothing to do with the cutting or hauling, the relation of master and servant was not thereby created, and

that the employer would not be liable for the carelessness of his employee in performing the labor.

"Although, in a general sense, every one who enters into a contract may be called a 'contractor,' yet, that word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do specific jobs of work for other persons, without submitting himself to their control with respect to all the petty details of the work. . . . . The true test, as it seems to us, by which to determine whether one, who renders service to another, does so as a contractor or not, is to ascertain whether he renders the service in the course of. an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is to be accomplished." . . . "One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely according to his own ideas, or in accordance with a plan previously given him by the person for whom the work is done, without being subject to the latter with respect to the details of the work, is clearly a contractor, and not a servant." S. & R. on Negligence, §§ 76–77.

"The difficulty always is to say whose servant the person is that does the injury ; when you decide that, the question is solved. . . . When the person who does the injury exercises an independent employment, the party employing him is clearly not liable." WILLIAMS, J., in *Milligan* v. *Wedge*, 12 Ad. & E. 177. In that case a butcher employed a drover to drive a beast home for him, and the drover employed a boy, and through the boy's negligent driving, the beast ran into the plaintiff's premises and damaged his property, and the court held that the boy was the servant of the drover, and not the servant of the butcher, and that the latter was not liable for the injury.

"I understand it to be a clear rule in ascertaining who is liable for the act of a wrong-doer, that you must look to the wrong-doer himself, or to the first person in the ascending line who is the employer and has control of the work ; that you cannot go further back and make the employer of that person liable." WILLES, J., in *Murray* v. *Currie*, L. R. 6 C. P. 24. In that case a

stevedore was employed to unload a vessel, and the plaintiff was injured by the carelessness of one of the vessel's crew, who, at the time of the injury, was working for and under the direction of the stevedore, and the court held that the employer of the stevedore was not liable for the injury.

In *Reedie* v. *Railway Co.* 4 Exch. 244, a contractor's workmen, in constructing a bridge over a public highway, negligently allowed a stone to fall upon one passing beneath, and it was held that the railway company was not responsible for the injury. Platt, B., put this significant inquiry : "Suppose the occupier of a house were to direct a bricklayer to make certain repairs to it, and one of his workmen, through clumsiness, were to let a brick fall upon a passer by, is the owner to be liable?" The decision shows that, in the opinion of the court, the question should be answered in the negative.

In *Murphey* v. *Caralli*, 3 Hurl. & C. 461, the plaintiff was injured by the falling of a bale of cotton, which had been negligently piled by persons employed by the defendant; but it appearing that the piling was done under the direction of one Jones, who was employed by the owner of the warehouse in which the cotton was stored, the court held that this fact relieved the defendant from responsibility. "The bales which caused the mischief," said Pollock, C. B., "having been stowed under Jones' directions, I think that he and his master alone are responsible."

In *Pearson* v. *Cox*, 2 C. P. Div. 369, a tool, called a straightedge, was jostled out of the window of a house that was being built, and fell upon the plaintiff and injured him ; but it appearing that the act which caused the straightedge to fall was the act of one of the men employed by the mason, a sub-contractor, the court held that the builders of the house were not liable.

In *Forsyth* v. *Hooper et al.* 11 Allen, 419, the defendants had contracted to cast a chime of bells and place them in the tower of the Arlington street church, in Boston. The plaintiff was injured by a chain carelessly thrown from the tower by one of the men engaged in hoisting the bells. The jury returned a verdict for the defendants, and the court sustained it upon the ground that the defendants had employed one Leonard to do this part of the

work, and that the evidence, though conflicting, was sufficient to justify the jury in finding that the defendants had relinquished to Leonard the management and control of the manner of doing the work.

In *Wood* v. *Cobb et al.* 13 Allen, 58, the court say it is too well settled to admit of debate that the employer of one who exercises an independent employment is not responsible for the negligence of one in the latter's service. In that case the defendants, who were dealers in fish, had employed a truckman to deliver fish to their customers each Friday, for a dollar a day, he furnishing his own team and taking such route as suited his convenience. On one occasion, being sick, he told his servant to get help, and the defendants allowed a boy in their employ to drive one of the teams; and he, while doing so, drove against the plaintiff, and caused the injury complained of; and the court held that at the time of the injury, the boy was the servant of the truckman, and not the servant of the defendants, and that the latter were not responsible for the injury.

In *Eaton* v. *E. & N. A. Railway Co.* 59 Maine, 520, the question we are now considering was fully examined, and the doctrine of the foregoing cases affirmed.

Assuming, therefore, that the law is now well settled that an employer is not responsible for a contractor's negligence, nor for the negligence of a contractor's workmen; and that one who carries on an independent business, and, in the line of his business, is employed to do a job of work, and in doing it, does not act under the direction and control of his employer, but determines for himself in what manner it shall be done, is a contractor, within the meaning of the law, let us apply it to the case before us.

The case shows that Canselo Winship was a slater by trade, and carried on the business of a slater, and had done so, in Portland, for more than twenty years, keeping a shop, and a slate on which to receive orders, and men constantly in his employ to assist in executing such orders as he should receive. He was, therefore, carrying on what the law denominates an independent business. The case also shows that he had been employed to slate the Second Parish church, in Portland, then

being built, and to do other work upon it ; that the roof after-wards leaked and he was requested to repair it ; that he took two men, then in his employ, and went into the tower of the church and assisted them in putting out a ladder to enable them to get on and off the roof, and to carry on the materials needed to make the necessary repairs ; that the men continued to use the ladder (taking it into the tower when they went to their dinners, and putting it out again upon their return) till about three o'clock in the afternoon, when it was blown down and fell upon the plaintiff, as already stated.  No officer or agent of the parish interfered with the men, or gave them any directions whatever.  On the contrary, the chairman of the parish committee, by whom Winship was employed, testifies that he entrusted the matter entirely to him, as he had been in the habit of doing ; and this is confirmed by the men and contradicted by no one.  Winship paid his men but a dollar and a half a day, while he charged and received from the parish four dollars a day for their labor.

Here, then, we have a case, where a man who is carrying on an independent business, is employed, in the regular course of his business, to do a job of work ; he is left entirely free to do the work as he pleases ; he sets two of his own servants at work upon the job, charging his employer a much larger sum for their labor than he pays them ; they so negligently place a ladder in use by them that it is blown down by the wind and injures a passer by.  Now, if it be a rule of law that one who carries on an independent business, and, in doing jobs of work for others, acts independently, so far as the manner of doing it is concerned, is a contractor, and not the servant of his employer, can there be a plainer case for the application of the rule than this?  We think not.  If Winship and his workmen can, under these circumstances, be regarded as the servants of the parish, so as to make the parish liable for their negligence, we fail to see why the same rule would not apply to the expressman, who is employed to carry a trunk to a depot, or to the hackman who is employed to drive one about town, or to the scissors-grinder who stops in front of a house and is employed to sharpen the knives and the scissors of its occupants, or to the plumber and the gas fitter ; and why it

would not have applied to the drover, and the stevedore, and the truckman, and the drayman, in the cases cited. We think it would. In principle the cases are not distinguishable.

Our conclusion is that, the verdict in this case is clearly wrong, and must be set aside.

. *Motion sustained. Verdict set aside.*
*New trial granted.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and LIBBEY, JJ., concurred.