# CHARLESTON.

### SOWARD v. AMERICAN CAR COMPANY.

Submitted June 4, 1909.   Decided November 16, 1909.

1. MASTER AND SERVANT—*Injury to Servant—Defective Machinery.*
    A master is liable for injury to a servant from defective
    machinery, not for danger only, but only for negligence. The
    fact of such injury will not alone impose liability on the master.
    (p. 269).

2. SAME—*Injury to Servant—Appliances.*
    A master is not bound to furnish the very best and safest
    machinery and appliances for his servant. So they be such as
    are reasonably safe, and may be safely used with due care on
    the part of the servant, the master is not liable for injury to
    the servant therefrom. The master is not liable for mere error
    of judgment. (p. 269).

3. SAME—*Injury to Servant—Defective Machinery.*
    A master using machinery that is defective is not liable
    for injury to his servant from it, unless the master know, or
    under the circumstances, should know such defectiveness.
    (p. 271).

4. APPEAL AND ERROR—*Trial—Review—Decision.*
    When, in an action for tort, the evidence is such that a verdict
    for plaintiff should be set aside, the court, if asked, should
    direct a verdict for defendant, and if it refuses, the appellate
    court will set aside judgment and verdict, but will not render
    final judgment for defendant; but will remand for a new trial,
    unless it very clearly appears that the plaintiff cannot better
    his case on a new trial. (p. 272).

Error to Circuit Court, Cabell County.

Action by Opha Sowards against the American Car & Foundry
Company. Judgment for plaintiff, and defendant brings error.
                                                   *Reversed.*

*Anderson, Strother & Hughes,* for plaintiff in error.

*Null & Higgins, for defendant in error.*

BRANNON, JUDGE:

Opha Sowards was in the employ of The American Car & Foundry Company. He was one of those operating a drill press, and his arm being broken while at work, he sued the company for damages and recovered $2,000, and the company brought the case to this Court. Upon the surface or table of this machine, the drill presser, are laid pieces of iron for the purpose of drilling holes in them. This is done by upright drills with boring or drilling bits fastened in the drills. These drills revolve. The bits are held fast in place by means of set-screws screwed into the shanks of the drills. At one end of the drill presser were two drills. These two drills, by mere guess or estimate evidence, are six to eight inches apart, but by actual reliable measurement fifteen inches. Sowards says he would "judge about six or eight inches apart. Maybe a little further. I wouldn't say." The set-screws protrude from the drills, and the two in these two drills at the end of the table of the drill press, to the right of the operator, take up about two inches leaving balance of the fifteen inch space clear. At the other end of the table were two like drills, the space between the second of the other two drills at the right hand end of the table and the third drill nine feet along the table and four up and down. Behind the drills were pipes leading to the bits, with stop-cocks, above the bits, used for letting water into the iron where the bits worked, for the purpose of cooling the bits as they would become heated from friction. These stop or water cocks were to the left of the drills, more handy to the operator's left hand. Sowards reached around the second bit with his right hand to open a stop-cock to let water to the bit, and in so doing his sleeve was caught by the nut or head of the set-screw in the second bit, and his arm was broken. Sowards had been working for the company a considerable time, but at this particular work only a week. He worked in the day, others at night, at this machine. At night the set-screw in the second drill broke, and the hands procured another one and fastened it in the drill in place of the broken one. Sowards resumed work at seven o'clock next

morning, and worked at the drill till two o'clock, when the accident happened. He says he did not know that another setscrew had been put in the drill. It was put in, not by any manager or superintendent, but by the hands without authority. It is not claimed that the machinery was defective, or that this new set-screw was defective or faulty. The sole grievance, on which liability is asserted, is that the new set-screw was longer than its predecessor, and protruded farther from the drill than did the former one, and was more likely to catch Sowards' arm than it. The evidence as to the length of this set-screw, its additional protrusion or extension from the upright drill, varies. Sowards says "It stuck out something like one inch and a quarter or one inch and an eighth." A witness for plaintiff, Callicott, says that the set-screw stuck out about one inch further than the former one. Johnson, a witness for the plaintiff, says that the set-screw that had been in the drill protruded about one inch and an eighth, and the new one a quarter of an inch more. Another witness for plaintiff, Wood, says the new one protruded one and a fourth or one and a half inches. So, the increased length or additional projection of the substituted setscrew was one fourth of an inch by plaintiff's evidence. The set-screw that caught Sowards was not produced, nor its exact length ascertained. It is doubtful whether it protruded any more than the former one.

Upon a demurrer criticism of the declaration is made; but counsel do not specify its defects. I think it questionable in the respect that it does not distinctly aver that Sowards' arm was broken from or because of the set-screw; it does not say how or from what the hurt came, except inferentially. It is likely bad for this.

The defendant was refused an instruction to find for it. Under this instruction we must decide the merits by the evidence. Is it possible that the change of a set-screw of the small increased length of one-fourth inch can fix negligence upon the defendant and put heavy damages upon it? We must be able to fix negligence upon the company. We held in *Newhouse* v. *Railroad Co.*, 62 W. Va. 562, that "generally, as between master and servant, negligence will not be imputed from the circumstance alone of injury due to defective machinery or appliances, but some affirmative acts of negligence, either of omis-

sion or commission, must be shown." The law everywhere to make the master liable, says that mere injury from even defective machinery is not enough; but culpable negligence must be proven. 20 Am. & Eng. Ency. L. 87; 26 Cyc. 1411. See *Stewart* v. *Railroad,* 40 W. Va. 188. Under this rule does the use of this set-screw, even if the master had ordered its use, fix negligence upon the master? The slight difference between the two set-screws? If so, the master must not vary, in the slightest, his instruments. If so, he is made to guarantee the safety of his servants at all hazards. But we know that the master is not required to do so. *Stewart* v. *Railroad,* 40 W. Va. 188; *Rease* v. *Wheeling &c.,* 42 *Id.* 333. The master does not guarantee that his appliances are free of danger. Danger lurks in operating all machinery, let the master do his utmost for the safety of his servants. The servant assumes dangers inseparably connected with work. The master is answerable only for negligence. "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence." Labatt, Master & Servant, p. 112. Then, was this company guilty of negligence in changing the set-screw so that it occupied one quarter of an inch more than the former one of the fifteen inch space between the two drills? "The master is not bound to furnish the safest and best machinery, nor provide the best methods for the work in which he is engaged, in order to save himself from responsibility for injury to his servant. If the machinery and appliances be in common use and are such as can, *with reasonable care,* be used without danger to the employee, it is all that can be required of the employer." *Giebell* v. *The Collins Co.,* 54 W. Va. 518; *Seldomridge* v. *C. & O. Co.,* 46 *Id.* 569. Not bound to insure absolute safety of machinery. Bailey, Master & Servant, 14. It is enough if the master furnish with reasonably safe and suitable appliances. He need not furnish "those of a particular *kind".* 20 Cyc. 1107. "The master is held liable only when the thing used is so hazardous as not to be fit for use." Bailey, Master & Servant, 25, 26. Such the principle propounded in *Giebell* v. *Collins Co.,* 54 W. Va. 518, and *Berns* v. *Coal Co.,* 27 *Id.* 286. Who can say that this set-screw could not have been used with safety by the exercise of due care? Who will say that it was so hazardous as to be unfit for use? Not a scintilla of ev-

idence proves this. A master is not bound to adopt any particular instrumentality. Labatt, Master & Servant, section 35. In this matter the law does not require of the employer extraordinary or superhuman care, but only ordinary care, such as prudent men exercise. *Hoffman* v. *Dickenson,* 31 W. Va. 143; 20 Am. & Eng. Ency. L. 74; *Southern R. Co.* v. *Mauzy,* 98 Va. 692. The master is held only for such danger as is likely to happen, not that every possible accident or contingency shall be anticipated and guarded against. Bailey, Master & Servant, 18; 20 Am. & Eng. Ency. L. 92. "That an implement is new and requires a different kind of management by the person using it, is no reason against its introduction, and an employe is charged with knowledge of its visible qualities and the ordinary working and effect of those qualities". *The Gulf R. Co.* v. *Williams,* 72 Texas 159. "The fact that a master uses different types of the same kind of appliances does not import culpability." Labatt, section 38. That section lays down that a master may change his appliances. The defendant company kept and used set-screws of different diameters and lengths. Is it possible that it could not make a slight change of a quarter of an inch in the length of one without being ruined by such claims for damages? And it is not every mischoice of implements or machinery that subjects him to liability. Mere error of judgment will not do so. There must be actual negligence. *O'Neil* v. *Chicago &c. Co.,* 1 Am. & Eng. Anno. Cases, 337; 66 Neb. 638. The master cannot be denied right to manage his business in his own way. He cannot be denied reasonable discretion in the use of implements. He may select from different styles. *Kehler* v. *Schwenk,* 144 Pa. 148 (13 L. R. A. 374). It is appropriate to ask, Was the accident any more likely to happen from the substituted set-screw than from the one used the day before? It is likely that the accident would have occurred with the former one. We cannot say that it would not.

We are of opinion that the use of the set-screw doing the damage did not call for a verdict, and that the court should have directed a verdict for the defendant, and should have sustained the motion to set aside the verdict. The plaintiff showed no cause of action under the law.

We may supplement this position by another feature of the case calling for a verdict for the defendant. Above I have gone

on the plaintiff's evidence, and have treated the case as if the defendant had put in the set-screw; but there is no pretense for this theory. The change was made some time in the night before the accident when the superintendent was absent. He knew nothing about it. The change was made by workmen in the establishment, fellow servants. If a place becomes unsafe from the act of a fellow servant, no liability on the master, he knowing nothing of it. Note 26 Cyc. 1106. "In order to show master's negligence plaintiff must make an affirmative showing of actual knowledge on his part of the defects which show that, in the exercise of ordinary care, he should have known it." 26 Cyc. 1450 and 1168. All the books say that he must know the defect, or that it existed so long that he should have known it. In this case the master did not know about the set-screw's being substituted by another. Sowards did not inform the manager. No one did. The drills stopped frequently to change iron, and Sowards could have seen the set-screw. It was visible before his eyes. He himself says so. Other witnesses say the same.

And then the law is that a reasonable time for repair is allowed after notice. 20 Am. & Eng. Ency. L. 94; 26 Cyc. 1141. The defendant had no notice of state of things. The change was made at night and only a few hours before.

Again we may say that Sowards is chargeable with contributory negligence. He must have been careless in passing his arm between the drills, and letting his sleeve be caught, as with care he could have safely passed his arm in a space of fifteen inches. But the easier and more ready way was to pass his hand to the left of the second drill in the space of nine feet by four, instead of running the risk of passing his arm between the first and second drills. This would have been free of danger. All authorities say that a workman must exercise great care in operating dangerous machinery. It is always attended by danger, which calls for prudence and caution.

The entire court is of opinion that the evidence shows no cause of action, and if instead of an instruction to find for the defendant there had been a demurrer to evidence, all would unite in giving final judgment for the defendant. Judge Miller and I would do so to end litigation, as the case is, but the majority think otherwise. We think that cases wherein the matter has been pointedly decided would justify final judgment.

It clearly appears that a better case cannot be made by the plaintiff. *Maupin* v. *Insurance Co.*, 53 W. Va. 557; *Anderson* v. *Tug River Co.*, 59 *Id.* 301; *McMillan* v. *Coal Co.*, 61 *Id.* 531. *Cobb* v. *Glen Boom Co.*, 57 W. Va. 49, is strong authority for it. Even under the test put by *Ruffner Bros.* v. *Insurance Co.*, 59 W. Va. 432, and *Hoylman* v. *Railroad,* 65 W. Va. 264, there ought to be judgment for defendant. Under the very letter of Code, chapter 135, section 26, this Court must render such judgment as the court below should have rendered. What judgment should it have given? It should have directed a verdict for defendant, and rendered judgment for it, and not having done so, ought to have corrected its error by setting aside the verdict and giving judgment for defendant. A motion by defendant for a direction to find a verdict for him is a substitute in modern practice for the largely disused demurrer to evidence. It has the same effect, and is dealt with as the same. 6 Ency. Plead. & Prac. 456, 672; *Parks* v. *Ross,* 11 How. (U. S.) 362; Thompson on Trials, section 2267. This Court treats a motion to exclude evidence as demurrer to it. There is no difference in a motion for a verdict. *Nuzum* v. *Railway,* 30 W. Va. 228. My own position is, that even where there is no motion for a verdict for defendant, and only a motion to set aside the verdict as unsupported by evidence, the appellate court, upon sustaining such motion, will generally remand; but will, even in that case, give final judgment when it clearly appears that a new trial should result in a verdict for the defendant. (3 Century Digest, section 4579). But where there is a motion or instruction asked for a verdict, I would give final judgment for defendant upon reversal. I would go further than the *Hoylman* and *Tug River Cases.*

Therefore, we reverse the judgment, set aside the verdict and remand the case to the circuit court for a new trial.

*Reversed.*