Dorothy N. Prichard, *et al.*

*v.*

Etta Prichard, Executrix, *et al.*

(No. 10244)

Submitted April 18, 1951.   Decided May 8, 1951.

768

Fox, PRESIDENT, concurs in part and dissents in part.

*F. F . Scaggs, J. F. Harrison, Rummel, Blagg & Stone,* for appellants.

*Okey P. Keadle,* and *S. Jewell Rice,* for appellees.

RILEY, JUDGE:

Allen C. Prichard and Sallie L. Grehan, respectively, the son and daughter of B. J. Prichard, deceased, late a resident of Wayne County, brought this suit on an issue *devisavit vel non* to impeach the will of the decedent, B. J. Prichard, dated November 30, 1938, and admitted to probate in the office of the Clerk of the County Court of Wayne County, against Etta R. Prichard, administra-

trix of the estate of B. J. Prichard, deceased, and Etta R. Prichard in her own right. From a decree based on a jury verdict, declaring the paper writing of November 30, 1938, not to be the true last will and testament of decedent, Etta R. Prichard, executrix of the estate of B. J. Prichard, deceased (erroneously named in the caption of the bill as Ella R. Prichard, administratrix), Etta R. Prichard in her own right; Alice Prichard, widow of E. F. Prichard, a deceased son of decedent; E. Gordon Davis, Jr., and Kathryn R. Clement, the children of Stella Davis, decedent's daughter, who predeceased decedent; B. R. Prichard, M. J. Prichard and R. G. Prichard, decedent's surviving sons; Etta R. Prichard, guardian of Belvard Gillette Prichard, an infant; and Belvard Gillette Prichard, an infant, in his own right, prosecute this appeal.

This suit was brought within the two-year time limitation provided by Code, 41-5-11. After the bill of complaint was filed early in 1944, the original defendants, Etta R. Prichard, executrix, and Etta R. Prichard, in her own right, suggested on the record additional parties, and an order was entered, after the expiration of the statutory two-year period, requiring that such additional parties be brought into the case. This was done by an amended and supplemental bill of complaint filed by plaintiffs in 1945. To the amended and supplemental bill of complaint, the proponents filed a plea in bar setting up laches and an acceptance of benefits, and a plea that new parties having been brought in after the two-year period the relief as to them is barred.

The contestants filed special and general replications and demurrers to the pleas, and the matters arising were submitted to the Circuit Court of Wayne County.

Before the case was set for jury trial, the circuit court entered a decree declaring: (1) That the plaintiffs had not been guilty of laches in the bringing and prosecution of this suit; and (2) that they were not estopped by accepting benefits under the will. This decree set the

case for trial by a jury on March 16, 1948, on the single issue: "Whether the paper writing probated on the 26th day of December, 1941, in the office of the Clerk of the County Court of Wayne County, in the State of West Virginia, purporting to bear date on the 20th day of November, 1938, which purports to be the will of B. J. Prichard, deceased, is the will of the said B. J. Prichard, deceased." After a continuance the case was tried at the July term, 1948, resulting in the failure of the jury to agree on a verdict. The case was again tried resulting in the verdict and decree complained of.

At the trial of this case the jury was asked and answered in the negative the following interrogatory: "Did the original plaintiffs, A. C. Prichard and Sallie L. Grehan receive and accept moneys, stocks or other property from the Executrix of the Estate of B. J. Prichard, deceased, given to them by the will of said decedent, and retain and use the same with the knowledge of the alleged mental condition of said decedent, as charged by them in the Bill of Complaint?"

Though the court had already decided the question presented in the interrogatory in the absence of a jury, it, probably as a matter of precaution, submitted the question to the jury in the form of the interrogatory.

The proponents of this will assign three grounds of error that: (1) Though the suit was brought within the two-year period, prescribed by Code, 41-5-11, the bringing in of new and necessary parties beyond the two-year time limit after the will was probated served to bar the suit; (2) the verdict of the jury in finding that the paper writing, dated November 30, 1938, was not the true last will and testament of decedent was based on insufficient evidence; and (3) the contestant plaintiffs having accepted benefits under decedent's will with knowledge of impairment of testator's mind, as alleged in their bills of complaint, have made an election and are thereafter barred in this suit from impeaching the will.

In support of the defense that, though the suit was brought within the two-year period, necessary and proper parties, which were brought into the suit on amendment of the pleadings, are barred under Code, 41-5-11, the proponents filed what purports to be a plea of the statute of limitations. Counsel's position, in filing a plea of the statute of limitations, fails to consider that Code, 41-5-11, does not provide for a statute of limitations in the ordinary sense of the term, but the time limit provision of the statute is part and parcel of the right and the remedy. *McKinley* v. *Queen,* 125 W. Va. 619, 25 S. E. 2d 763. Once the suit has been instituted by proper parties, other parties may be admitted and the suit shall not fail because of the nonjoinder of parties. In *Jackson* v. *Jackson,* 84 W. Va. 100, pt. 8 syl., 99 S. E. 259, in appraising Section 32 of Chapter 77 of Barnes' Code, 1918, which is redrafted in the Code of 1931, 41-5-11, except that the latter statute reduced the five-year period to a period of two years, this Court held: "Institution of a suit to impeach a will within five years from the date of the probate thereof is a sufficient compliance with the requirement of sec. 32 of ch. 77 of the Code, respecting the time of the institution thereof, even though a necessary party has been omitted; and an amended bill making an omitted person a party may be prosecuted."

On the second issue in this case, a careful examination of the record does not disclose that the decedent lacked such quality of mind as would inhibit him from executing the will sought to be impeached. B. J. Prichard was a well known citizen of Wayne County, West Virginia; in 1902 he organized the Wayne County Bank, and became its president; from the year 1902 until his death in 1941 he was president of the bank; he was a practicing lawyer in the Town of Wayne, and the owner of extensive oil and gas interests in that county; and he and his family were the principal stockholders in that bank. This record further discloses that decedent until the close of the very evening of a long and useful life possessed a strong mind that was fully capable of disposing of property, both by

will and by deed. In this regard it is well to bear in mind that the capacity of the testator to make a will requires that he know his property and the objects of his bounty; but it is not necessary that he know every item of his property or the value of his estate. It is sufficient if he knows of what his property consists and the persons to whom he desires to give it. *Freeman* v. *Freeman,* 71 W. Va. 303, 76 S. E. 657.

That testator's will was duly and properly executed, in accordance with the statutes of this State, appears clearly from the testimony of the two attesting witnesses, Dr. I. W. Taylor and Charles J. Moore of Huntington. These witnesses testified that the will under appraisement was formally executed. For some reason, which this Court cannot determine from the record, the attesting witness Moore did not testify as to testator's testamentary capacity. In fact, except for the mechanical details connected with the execution of the will, Moore gave no testimony. However, the other attesting witness, recognized as an eminent and prominent physician in the City of Huntington, testified as to the testamentary capacity of the decedent, B. J. Prichard. His testimony is important in the determination whether the paper writing which he signed as an attesting witness, was, in fact, the true last will and testament of decedent. Dr. Taylor was not only an attesting witness to B. J. Prichard's will, he was testator's personal physician and had attended him at various times for slight illnesses. He testified that after he entered the room in which the will was signed, he saw testator take a paper from his pocket, which turned out to be the will under appraisement, and place it on the table or desk, on which he signed it in the presence of the two attesting witnesses and the witnesses signed it in testator's presence and in the presence of each other. This very competent witness testified: "Mr. Prichard, in my opinion, was not as keen as he had been years ago, but it was my opinion he knew what he was signing and he knew it was his will, and that he had in mind what the will contained." As the time in

which the testator's mental capacity is to be determined is when the will is executed, not some time before or after, Dr. Taylor's testimony is important as bearing on testator's mental capacity. *Jenkins* v. *Trice,* 152 Va. 411, 147 S. E. 251; and because witness was both an attesting witness and testator's physician, his testimony is entitled to great weight. *Kerr* v. *Lunsford,* 31 W. Va. 659, 8 S. E. 493; *Hall* v. *Hall,* 181 Va. 67, 23 S. E. 2d 810; *Nicholas* v. *Kershner,* 20 W. Va. 251.

Perhaps the most convincing evidence supporting testator's mental capacity to execute the will under appraisement is the testimony of F. F. Scaggs, a member of the Wayne County Bar, who was testator's attorney during the latter years of his life. As the scrivener of the will under consideration, his testimony likewise is entitled to great weight. *Hall* v. *Hall, supra.* This witness testified, and his testimony is not impeached in the slightest particular, that testator gave him detailed instructions on two yellow sheets of paper in testator's own handwriting as to what he desired in his will; and discussed with witness what he wanted to incorporate in his will. A draft was then prepared, in accordance with these instructions, which was submitted to the testator, who later executed it in the presence of the attesting witnesses, Dr. I. W. Taylor and Charles J. Moore, the scrivener not being present. Some time after the will was prepared and mailed to testator, this record discloses that the latter contemplated a minor change in his will, and the scrivener was asked to prepare another testamentary paper in accordance with the proposed modification. Evidently, upon reconsideration testator decided to leave the will as originally drafted, and again someone whose voice was unknown to the scrivener, telephoned Scaggs to that effect.

If the will under consideration were a simple testamentary paper to the effect that testator devised and bequeathed his property to a particular person or persons, we would not be so convinced, as we now are, that

testator knew what he was doing with reference to his property and the objects of his bounty, when he executed the will sought to be impeached. This will, however, is skillfully written, and details the different items of property, stocks and other interests it purports to devise and bequeath to the several objects of his bounty. A casual reading of the instrument under consideration in the light of the circumstances in which it was prepared strongly indicates that the testator knew exactly what he was doing when he signed the paper under attack. The testimony concerning the circumstances in which the will was drafted by the scrivener, Scaggs, together with that of Dr. Taylor, is strongly persuasive that, notwithstanding the verdict of the jury, decedent was of sound mind and memory at the time he signed the will. *Kerr.* v. *Lunsford, supra; Martin* v. *Thayer,* 37 W. Va. 38, 16 S. E. 489; *Payne* v. *Payne,* 97 W. Va. 627, 125 S. E. 818.

Moreover, in addition to the testimony of Dr. Taylor and the scrivener of the will, F. F. Scaggs, the proponents adduced the testimony of W. D. Click, then County Agricultural Agent of Cabell County, and an intimate friend of testator, who had formerly been County Agricultural Agent of Wayne County. This witness had been a director of the Wayne County Bank since 1923, and had attended directors' meetings thereof during the years 1936 and 1938, when Prichard was also in attendance. In answer to the inquiry whether on November 30, 1938, the date the will was executed, he thought decedent knew the property he owned and the persons to whom he made disposition of his property, and whether decedent was capable of making a will, the witness answered, "I think he was. It was a matter he [testator] had thought about for years, and I think he was capable of disposing of his property then as he would have been a few years before." This witness also testified that decedent had talked with him about the will when they both lived at Wayne. On the question whether the will under appraisement was a just will, Click testified that testator

had been able to give his family by his first marriage good educations; but that because testator's financial situation was not as good in the latter years of his life as it had been earlier, he had not been able to do so well by the children of his second marriage. "He always claimed", Click testified, "he wanted to take into consideration what he had spent on his children previously and when he disposed of his property he wanted to even it up."

Mrs. J. E. Kessler, a next door neighbor of decedent in Huntington, testified that she saw decedent almost daily and discussed with him matters of a business and social nature, and that she thought he was a person of sound mind.

It is true that other witnesses testified variously to the decedent Prichard's mental condition. As testator lived intermittently in the Town of Wayne and the City of Huntington, he came into contact with many persons in those counties. These persons would naturally get different impressions of decedent's personality and ability. There is some evidence in this case that there was a lack of mental capacity on the part of testator, and though B. J. Prichard was president of the Wayne County Bank from its origin until his death in 1941, Dr. Johnson was named executive vice-president in January, 1938, because, as Byron Smith, cashier of the bank, who came to Wayne in 1906 when decedent was living there and was president of the bank, testified that Dr. Johnson was named executive vice-president of the bank because "they thought Mr. Prichard couldn't handle the affairs." This witness testified that as early as April, 1937, until 1938, he noticed that decedent's mind had "deteriorated." He further testified that in his opinion in November, 1938, decedent did not have sufficient mental capacity to know what property he owned and the people he wanted to remember. However, the witness testified that decedent with some degree of regularity attended board of directors' meetings of the bank during the year 1938 and later; and notwithstanding it takes more mental capacity

to make a deed or contract than it does to make a will *(Kerr* v. *Lunsford, supra),* the witness as a notary took the acknowledgment of the decedent, B. J. Prichard, as president of the Southern West Virginia Oil & Gas Corporation on July 18, 1939, to an agreement with the Wayne Gas Company, and also witness took the acknowledgment of testator as president of the Southern West Virginia Oil & Gas Corporation, to an oil and gas lease with certain lessors on March 28, 1939, involving forty tracts of land, which acknowledgments were taken after the will in controversy was signed and attested, as hereinabove indicated. In addition to this, the witness, Byron Smith, continued to do business with decedent after the paper writing was executed, including the cashing of testator's checks drawn on the bank, of which testator was the president and witness the cashier. His activities in this regard bear directly on the weight and credibility of his testimony concerning testator's lack of mental capacity to execute the will in question.

The testimony of the witnesses adduced in support of the position that B. J. Prichard was not of sound mind at the time he executed the paper writing, in our opinion, is entitled to little weight. With the exception of the testimony of Byron Smith, who, at the time of the execution of the will in controversy, had taken acknowledgments to important papers involving the interests owned by decedent, there is only the testimony of a few witnesses, none of whom was present at the time the will was executed and none of whom was in a position to testify with any degree of accuracy as to testator's mental capacity at the time the will was executed. C. G. Fry testified that he did not think Prichard would recognize him on the street during the last two or three years of his life, but this witness left the Town of Wayne in 1920 and did not return until 1940, and did not express any opinion as to testator's mental capacity. Another witness for contestants, Charles E. Walker, testified that he left the Town of Wayne about 1899, and, when driving through Wayne about a year before testator's death, he

saw decedent waiting for a bus and picked him up and drove him to Huntington. He says that Prichard did not seem to recognize him. Another witness, Bert Allen Fannin, claims to have brought his father to visit Prichard in Wayne in 1938, and again about a month later in Huntington. He testified that testator acted like a man losing his mind, and detailed a certain happening which might indicate senility of mind, which he says took place in the living-room of testator's home at Huntington; and then witness testified that testator "laughed to himself and punched the floor with a cane". On the basis of these observations witness expressed the opinion that testator was not capable of making his will.

In addition to the foregoing witnesses, only four witnesses were produced on behalf of the contestants on the question of testator's mental capacity: Edith Gill, a former stenographer, J. H. Canterberry, Dora E. McCann, and Dilla Ketchem, the last being Deputy Clerk of the Circuit Court of Wayne County. Edith Gill testified that she had worked as Prichard's stenographer from 1923 until 1938, but she expressed no opinion as to her former employer's mental condition. Canterberry testified that he had not talked with Prichard for two or three years before his death; that he thought he was quite feeble, but he likewise gave no opinion as to testator's mental capacity. Dora E. McCann testified, though Prichard had a room at her home until 1936, five years before his death, that afterwards when she would pass him on the street he would sometimes not recognize her. Dilla Ketchem simply identified a file in an action against one Lambert, in which an affidavit was filed by testator's son as his agent; but the record before the justice of the peace shows that Prichard personally signed the appeal bond.

As heretofore indicated, the time of the execution of a will is most important in the determination of testator's mental capacity. In fact a testator's mental capacity at that time is the determinative factor. *Kerr v. Lunsford, supra; Martin v. Thayer, supra; Payne v. Payne, supra.*

Naturally, as testator became advanced in years, his mental capacity was probably not as acute as in former years, but, after all is said and done, the property which he sought to devise and bequeath was his, which he had accumulated through a long and useful life, and his right to dispose of it by will could not be taken from him on testimony concerning certain peculiarities of demeanor in testator's later years by persons who met him only on occasions. Such is not the penalty which the law inflicts on old age in the testamentary disposition of property. Old age and eccentricity incident thereto are not sufficient evidence of incapacity to make a will. *Kerr* v. *Lunsford, supra; Mercer* v. *Kelso's Admr.,* 4 Gratt. 106.

This will was evidently executed by testator, as shown by the testimony of the witness Click, in conformity with a determination on testator's part to do justice among his children; and, as suggested, the fact that he was in his old age when he made the will now sought to be impeached, which the jury found was not his true last will and testament, should not deter this Court on the record before us from setting aside the jury verdict. We are persuaded to use the language of Judge Brannon of this Court, in *Buckey* v. *Buckey,* 38 W. Va. 168, 18 S. E. 383, cited in defendants' supplemental brief, a case involving the capacity of an agent grantor to execute a deed. In point 5 of the syllabus in that case this Court said: "A grantor in a deed may be extremely old, his understanding, memory, and mind enfeebled and weakened by age, and his action occasionally strange and eccentric, and he may not be able to transact many affairs of life, yet if age has not rendered him imbecile, so that he does not know the nature and effect of the deed, this does not invalidate the deed. If he be capable, at the time, to know the nature, character, and effect of the particular act, that is sufficient to sustain it." We, therefore, hold that the verdict of the jury on the question of testator's mental capacity to make the will in question is not based on sufficient probative evidence.

In view of this holding it is unimportant for this Court

to decide whether the plaintiffs have accepted the benefit of bequests under testator's will with knowledge that the testator lacked the mental capacity, as alleged in the bills of complaint, to execute the will in question. As plaintiffs could not accept and retain the benefit of bequests with knowledge that testator was, in fact, incapable of making a will, where mental incapacity is not established by the record, this issue necessarily becomes moot.

For the foregoing reasons we reverse the judgment of the Circuit Court of Wayne County and set aside the verdict of the jury. This brings us to the question whether we should dismiss plaintiffs' original and amended and supplemental bills of complaint here, or whether we should award a new trial and remand the cause for that purpose. On rehearing counsel for the appellants cited the cases of *Mullens* v. *Lilly,* 123 W. Va. 182, 13 S. E. 2d 634, and *DiBacco* v. *Benedetto,* 82 W. Va. 84, 95 S. E. 601, which hold that an issue out of chancery under Code, 56-6-4, is simply advisory to the trial chancellor and does not warrant a new trial. Relying on Code, 56-6-4, which reads: "* * * Although the verdict on such issue may be set aside, there shall be no new trial thereof, but the court may proceed to decree as if no issue had been directed", .counsel asserted the position that this Court was correct in its original opinion in dismissing plaintiffs' bills of complaint.

If this were purely an issue out of chancery, this position would be correct. That position, however, overlooks the fact that Code, 41-5-11, providing for an issue *devisavit vel non,* does not inveigh against the granting of a new trial upon the setting aside of a verdict such as is specifically provided for in Code, 56-6-4. Upon such reversal upon an issue *devisavit vel non,* as distinguished from an issue out of chancery, the statute does not warrant such proceedings as if the case, as in an issue out of chancery, were purely on the equity side of the court. If it did, of course, the cases of *DiBacco* v. *Benedetto, supra,* and *Mullens* v. *Lilly, supra,* would apply. In *Mul-*

*lens* v. *Lilly,* at page 198, it is stated that "The verdict of a jury rendered on an issue out of chancery is simply advisory to the trial chancellor. Its only object is to enlighten the conscience of the court. *Ammons* v. *South Penn Oil Co.,* 47 W. Va. 610, 626, 35 S. E. 1004. Under Code, 56-6-4, errors committed on the trial of an issue out of chancery do not warrant a new trial." But in two recent cases, *Powell* v. *Sayres,* 134 W. Va. 653, 60 S. E. 2d 740, and *Grottendick* v. *Webber,* 134 W. Va. 798, 61 S. E. 2d 854, this Court has distinguished an issue out of chancery, granted under Code, 56-6-4, from an issue of *devisavit vel non,* under Code, 41-5-11. In the *Grottendick* and *Powell* cases this Court, drawing its opinion from the two different expressions of the statute providing for an issue out of chancery and an issue *devisavit vel non,* held that in the latter case the proceeding has all of the character-istics of an action at law to such extent that a bill of exceptions is required. In Code, 41-5-11, it is provided that "After a judgment or order entered as aforesaid in a proceeding for probate ex parte, any person inter-ested who was not a party to the proceeding, or any person who was not a party to a proceeding for probate in solemn form, may proceed by bill in equity to impeach or establish the will, on which bill, *if required by any party, a trial by jury shall be ordered,* to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent. The court may require all other testamentary papers of the decedent to be produced, and the inquiry shall then be which one of all, or how much of any, of the testamentary papers is the will of the decedent. * * *" (Italics sup-plied). Thus it may be seen that on an issue *devisavit vel non,* the Court must, as distinguished from the dis-cretionary power of the Court, under Code, 56-6-4, "if required by any party", grant a jury trial to determine whether any, and if any, how much of [the paper writing or writings] offered for probate" is the will of the de-cedent. Thus, under Code, 41-5-11, a party coming within the provisions thereof is entitled to an issue *devisavit vel non,* and the trial chancellor has no discretion either to

.direct or to refuse to direct such issue, and, in addition thereto, if the verdict of the jury is sustained by the evidence, and there is no error of law shown in the trial, the verdict is binding on the trial chancellor. *Grottendick* v. *Webber, supra; Powell* v. *Sayres, supra; Snedeker* v. *Rulong,* 69 W. Va. 223, 71 S. E. 180; *Dower* v. *Seeds,* 28 W. Va. 113; *Dower* v. *Church,* 21 W. Va. 23; *Jesse* v. *Parker's Admr.,* 6 Gratt. 57, cited in the *Powell* case.

As the issue *devisavit vel non* has all the characteristics of an action at law on the trial, we apply the rule laid down in the case of *Koblegard Co.* v. *Maxwell,* 127 W. Va. 630, 34 S. E. 2d 116, that upon the reversal of a jury verdict in a law action, this Court is not at liberty to enter judgment here, but must award a new trial. See generally editorial note, Nature of Judgment in the Supreme Court When a Verdict is Set Aside on the Ground That a Contrary Verdict Should Have Been Directed in the Lower Court, by Professor Leo Carlin, College of Law, West Virginia University, 28 W. Va. L.Q., 218. So we are of opinion in this case that the judgment of the Circuit Court of Wayne County, based upon a jury verdict, holding that the paper writing in controversy is not the true last will and testament of the decedent, B. J. Prichard, should be reversed, the verdict set aside, and a new trial awarded.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*

Fox, PRESIDENT, concurring in part, dissenting in part:

I concur in that part of the opinion in this case which deals with the merits of the case, which has been questioned in a petition for rehearing and now becomes final. I also concur in the ruling of the Court that the case should be remanded to the Circuit Court of Wayne County for a new trial. I do this on the ground that the trial, upon the issue of *devisavit vel non,* under Code,

41-5-11, was and should have been governed by the rules pertaining to the trial of actions at law in general. There being conflict in the evidence in the case, there should be a new trial.

My dissent goes to the last paragraph of the opinion in which the remand for a new trial is based upon Point 8 of the Syllabus in *Koblegard Co.* v. *Maxwell,* 127 W. Va. 630, 34 S. E. 2d 116. It was not necessary to rely upon this case as authority for a new trial in this case, and it injects into this case a dispute which has no real bearing upon the merits of the controversy, and should not have been raised. The issue being forced, I cannot allow silence to mislead anyone as to my views.

I shall not go into an extended argument upon the merits of the holding in the *Koblegard* case. That must await a situation where the question is material. But inasmuch as what I conceive to be error is sought to be strengthened by repetition, I think it might be well to call attention to a few facts and holdings bearing upon the question.

The dispute goes back to the case of *Maupin* v. *Insurance Co.,* 53 W. Va. 557, 45 S. E. 1003, in which this Court held:

> "If a defendant, giving no evidence, moves the court to exclude the plaintiff's evidence as not sufficient to warrant a verdict for the plaintiff, or to direct a verdict for him, and his motion is overruled and this court reverses the judgment for that cause, it will not remand the cause for another trial, but will enter judgment for the defendant, or, as it chooses, direct the circuit court to do so, unless satisfied that it will work injustice."

That case was written by Judge Brannon, and appears to have been followed in *Anderson* v. *Tug River Coal and Coke Company,* 59 W. Va. 301, 53 S. E. 713; *Ruffner Brothers* v. *Insurance Co.,* 59 W. Va. 432, 53 S. E. 943;

*McMillan* v. *Coal Co.*, 61 W. Va. 531, 57 S. E. 129; *Soward* v. *American Car Company*, 66 W. Va. 266, 66 S. E. 329; and *Weeks* v. *Chesapeake & Ohio Railway Company*, 68 W. Va. 284, 69 S. E. 805. These cases were overruled, in so far as they conflicted with the ruling of this Court in *Dunbar Tire & Rubber Co.* v. *Crissey*, 92 W. Va. 419, 114 S. E. 804, in which it was held:

> "In a civil suit a judgment will not be rendered *non obstante veredicto* unless the merits of the case, as disclosed by the pleadings, justify such judgment. Where a conclusion as to the rights of the parties involves a consideration of the evidence, and the court comes to the conclusion that the jury's verdict is not supported thereby, a judgment *non obstante veredicto* will not be rendered, but a new trial will be granted upon motion of the party adversely affected by such verdict."

This case was followed by *Zogg* v. *Kern Oil & Gas Co.*, 94 W. Va. 17, 117 S. E. 620; *Gray* v. *Norfolk & Western Railway Co.*, 99 W. Va. 575, 130 S. E. 139; and *Clise* v. *Prunty*, 112 W. Va. 181, 163 S. E. 864. None of these cases went beyond the proposition that where the evidence was involved, and the verdict was set aside by reason of the insufficiency of the evidence to support it, the person prejudiced by the vacation of the verdict should have a right to a new trial. Everyone concedes that in such a case there should be a new trial.

Point 8 of the Syllabus in the *Koblegard* case goes much farther and reads:

> "Where, in an action at law, this Court, upon the reversal of a judgment of a trial court, sets aside a jury verdict on the ground that there is insufficient evidence to support the verdict, a new trial will be awarded in all cases except where there is a demurrer to the evidence."

The cases cited above, which are supposed to justify the radical departure from all former decisions, announced in the *Koblegard* case, do not, and were not intended to,

destroy the power of courts to render a judgment *non obstante veredicto* in a proper case, a practice long used to the end that there might be an end to litigation in cases where the court can see, beyond all question of doubt, that a plaintiff could not recover in, or a defendant sustain a defense to, a particular action. For example: Plaintiff brings an action based upon a transaction as to which there is no factual dispute, and the court holds he cannot recover because it involves a transaction void on grounds of public policy, and there can be no recovery thereon at any time. Of what value would it be to remand such a case for retrial? This is one of many situations which could arise where a court should be free to act in the interest of the prompt administration of justice.

As stated above, these questions are not involved here, but I do not believe that we should, in effect, reiterate as the law of this State, that this Court is helpless to end litigation where it can see there can be no possible recovery or the opposite in a new trial; or that its right to render judgment *non obstante veredicto* in a proper case should be destroyed, or at least substantially restricted. In modern times, certain people follow the policy of endeavoring to create the impression of truth by constant reiteration of that which is not true. I do not choose to engage in any such practice, and I file this dissent because I want to emphasize my disagreement with a statement of law that there must be a new trial in every case where the evidence is involved, except where there has been a demurrer to the evidence, which I believe to be unsound, and which by necessity, growing out of cases coming up in the future, must be ignored, modified or overruled. Being unsound in principle and practice, its recognition in any way is unwise.