RAILWAY COMPANY *v.* MORGART.

Opinion delivered May 16, 1892.

*Appeal—Repeated reversals—Dismissal.*

> Where two judgments in the same cause awarding damages to the plaintiff, based upon the same evidence, have been reversed for want of evidence to sustain them, and a third judgment is obtained upon substantially the same evidence, such judgment will be reversed and the cause dismissed, since it is evident that the litigation can serve no legitimate end.

Appeal from Nevada Circuit Court.

CHARLES E. MITCHEL, Judge.

*Dodge & Johnson* for appellant.

This case has been reversed twice. 45 Ark. 318 ; 8 S. W. Rep. 179. The same evidence was used except the evidence of Jack Weed. The same instructions were asked, objected to and given, and the same verdict was

rendered. The additional facts adduced do not change the legal aspect of the case, and it should be reversed again. 13 S. W. Rep. 740 ; 11 S. W. Rep. 212.

*Scott & Jones* for appellee.

1. Review the evidence in detail and contend that the verdict is amply supported.

2. The instructions have already been passed on by this court, except the fourth, which contains the principle that if the negligence of the master was combined with that of a fellow servant, and thus combined caused the injury, the plaintiff is entitled to recover. Wharton on Neg. sec. 227 ; 35 Ill. 217 ; 106 U. S. 700 ; 95 U. S. 546; 10 Gray, 274; 3 Vroom, 151; 46 Wis. 497; 135 Mass. 575.

3. There should be an end of litigation in this case. Three juries have passed upon it. 39 Ark. 491.

HUGHES, J. This is the third appeal in this case by the Railway Company. On the first appeal, reported in 45 Ark. 318, the court, through Judge Smith, said : "The testimony on both sides shows that the proximate cause of the disaster was the high speed at which the train was moved, in disregard of the danger signals ;" and that "it was impossible for the jury, with a proper regard for the undisputed facts in the case, to absolve Morgart from blame in the matter of accelerated speed." It was also said in the opinion, that "the jury could not have found that the condition of the track or of the trestle was the immediate cause of the wreck." On the second appeal, reported in 8 S. W. 179, the testimony was precisely the same as on the first, and the judgment was reversed for the same reason for which the judgment on the first appeal was reversed. The only material additional testimony on the third trial was that of John C. Weed, an experienced railroad employee, who had been for sixteen years in the employment of the defendant company, but was not in its employment at the time he

gave his testimony.   His testimony, so far as we deem it
material, was in substance:  That he was not present at
the place of the wreck when it occurred; that he arrived
at the place of accident about two hours after it occurred.
He says:  "I discovered, when I got there, that the
bridge had been raised from four to six inches, and the
rails at the south end of the trestle were swinging so
that they were clear of the ground.   The stringers of
the bridge had been raised from four to six inches.   I
don't know where the joint of the rail was.   When I
speak of the swinging rail, I mean that the stringers on
the bridge had been raised up, and the rails were not
solid on the embankment.   The wheels seemed to have
dropped down on the ties about twenty feet south of the
bridge.   There was evidence, for about twenty feet on
the rail that I could see, of a wheel riding the rail, but
I could not tell which wheel it was.   From what I saw
I should say the swinging rails were not safe, and were
sufficient to cause the wreck."   "I know nothing of the
condition of the bridge at the time of the accident."

The testimony for the defendant tended to show that
a short time, a few minutes, before the wreck, the bridge
was in safe condition for a train to pass over it at a
proper rate of speed; that the conductor of the train,
Morgart, the plaintiff's intestate, had been expressly
notified the morning before the wreck, which occurred a
little after twelve o'clock, that the bridge would be
repaired that day, and had been warned to look out; that
he was expressly forbidden by the rules of the company
to run his train at a speed above fifteen miles an hour;
that he had been furnished with a copy of these rules;
that, at the time the wreck occurred, his train was run-
ning from twenty to thirty miles an hour; that slow
boards were up near the bridge; that they mean, run at
four to six miles an hour till the track is safe again; that
going south it is down grade for some distance before

reaching the bridge ; that on down grade the conductor has charge of the train, and it is his duty to have the the brakes applied ; that "engineers are subject to the orders of the conductors having charge of the trains," etc.; that the train of which the deceased was in charge crossed the same bridge going north the morning of the wreck at 7 or 8 o'clock ; that it was backing when the wreck occurred, the tender in front, the engine following, then the caboose, followed by twenty-one or two flat cars, the first six of which were off the track and broken up, the second six of which were off the track, and the others, nine in number, were standing on the rails south of where the tender left the track.

If the testimony of John C. Weed was to be believed, the jury might have inferred that the swinging rails at the south end of the bridge described by him were swinging when the train reached the bridge, and were the proximate cause of the wreck. But we are unable to comprehend how this statement can be true.

It is contrary to common observation, reason and experience that the tender and engine, with all the cars in the train, could have passed over these "swinging rails," and any of the cars remained on the rails south of them afterwards. We are impressed with the conviction that, in the nature of the circumstances, this could not have been the case. Recognizing the rule that it is the province of the jury to determine the credibility and the weight of the testimony, where there is testimony that does not carry on its face evidence of its falsity, or which in the nature of things cannot be true, the court is constrained to hold that it is impossible that this evidence about the swinging rails could be true. For the want of evidence, therefore, to sustain the verdict of the jury, the judgment in this cause is reversed.

As this is the third judgment which has been reversed in this cause for the want of evidence to support the ver-

dict of the jury, and as litigation should have an end when it has been thus protracted, and it is apparent that it can serve no legitimate end, the cause is dismissed.