# CHARLESTON

ANDERSON v. TUG RIVER COAL AND COKE COMPANY.

Submitted February 20, 1906,   Decided April 10, 1906.

1. NEGLIGENCE—*Persons Liable—Acts of Independent Contractors.*
      Where one, for a stipulated price per piece, contracts to procure timbers for a mining company for use in its mine, from the lease of the company, and the company retains no supervision of the work, or control of the manner of doing it, and the contractor is responsible to it only to the extent of procuring satisfactory timber and delivering it at such times and places as needed, and employs and pays his own help in doing so, such contractor exercises an independant employment, and the company is not liable to one in its employ who is injured by the contractor in negligently prosecuting his work.   (p. 304.)

2. SAME.
      Where a competent and fit person renders services in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means of its accomplishment, such work not being in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual dangers when being prosecuted in the usual and ordinary manner, such person exercises an independent employment, and the person so employing him is not liable for wrongs committed by him, his agents or servants in the prosecution of such work.   (p. 305.)

3. SAME—*Independent Contractor—Question for Jury.*
      Where, from the evidence, it is to be determined whether or not one is an independent contractor, and the evidence is so conflicting as to support a finding of the jury, then it is purely a question for their determination, but if the evidence is without conflict, it then

becomes a question of·law as to whether or not an independent employment has been established.   (p. 303.)

4.   APPEAL—*Reversal—Insufficiency of Evidence—Rendering Judgment.*
      Where a motion is made to exclude the plaintiff's evidence because not sufficient to support a verdict in his favor, and the motion is overruled, and this Court reverses the judgment because of the insufficiency thereof, it will enter judgment for the defendant without remanding the cause, although the defendant introduces his evidence, where such evidence, taken in connection with that of the plaintiff, does not support the verdict, and where it does not appear·that·injustice will result from so doing.   (p. 312.)

5.   SAME.
      Where, at the conclusion of the evidence, the defendant asks for a peremptory instruction, directing a verdict in its favor, which the court refuses to give, and this Court reverses the judgment because the evidence is not sufficient to support the verdict, or because the verdict is contrary to the evidence, judgment will be entered by this Court for the defendant, without remanding the cause, unless satisfied that such course would be unjust.   (p. 314.)

Error to Circuit Court, McDowell County.

Action by Harvey Anderson, by his next friend, against the Tug River Coal & Coke Company.   Judgment for plaintiff.   Defendant brings error.

*Reversed, and Judgment Rendered.*

RUCKER, ANDERSON & HUGHES, for plaintiff in error.

D. J. F. STROTHER, for defendant in error.

SANDERS, JUDGE :

The plaintiff, Harvey Anderson, an infant, suing by his next friend, brought an action in the circuit court of McDowell county against the defendant, Tug River Coal and Coke Company, claiming damages for a personal injury alleged to have been sustained by him while working in the defendant's coal mine, and on account of the negligence of the defendant. A verdict and judgment in favor of the plaintiff was rendered for $1,800, and the same has been brought here for review on writ of error and *supersedeas.*

The defendant company, at the conclusion of the plaintiff's evidence, moved the court to exclude it from the jury and to direct a verdict in its favor, which motion was overruled, and at the conclusion of the trial, after all the evidence had been introduced, the defendant asked the court to instruct the jury to return a verdict in its favor, which instruction the court

refused to give. The refusal of this instruction presents the real ground of complaint here. To determine whether or not this instruction should have been given, it will be necessary to inquire what relation J. I. Garretson sustained to the company. It is presented by the plaintiff in error that the relation of master and servant did not exist between the company and Garretson, but that he was an independent contractor, and this being so, and the injury being the direct and proximate result of his act, that the company should not be held liable therefor.

The defendant in error insists that the determination of this question is one of fact, and it should be left entirely with the jury. This would be true if there were such conflict in the evidence as would support a verdict if found for the plaintiff. But when the evidence is not conflicting, there is nothing for the jury to decide, and it then becomes a question of law as to whether or not the facts proved are sufficient to support the particular theory or contention advanced. If the question at issue is one of fact, and the facts adduced are sufficient to support the verdict, or where the evidence is so conflicting as to support a finding for either the plaintiff or defendant, then the matter is purely a jury question. The facts in this case, however, are substantially without conflict, and, therefore, the rule advanced by counsel for plaintiff does not obtain here. "What constitutes an independent employment, so as to make the person engaged in the employment an independent contractor within the meaning of the rule under consideration, is a question of law for the court, and not a question of fact for the jury; but, as in other cases, subject to the rule that the jury are to determine the facts upon which the decision of the question of law is to be made." Thompson Comm. on Negligence, volume 1, section 641; *Emmerson* v. *Fay,* 94 Va. 60.

The evidence discloses that the defendant was, at the time of the injury complained of, the owner of a mining lease, in area about one mile in length by about a quarter of a mile in width, on which a coal mine had been opened and was being operated; that the plaintiff, who was about nineteen years of age, was employed as a driver in the mine. The mine was not running on the day of the injury, and the plaintiff was set to work, hauling slack from the outside to the inside of

the mine, which was used in ballasting the track. While the plaintiff was so at work on the outside, a noise was heard, to which plaintiff's attention was called, and he started to run, but just then a log came down the mountain side and rolled into the driftmouth, knocking down some timbers, one of which struck and injured him.

At the time of the injury, J. I. Garretson and his brother were at work on the mountain side, about three hundred yards above the driftmouth, getting out timber for use in the mine as props, cross-ties and caps. The timber which caused the injury was started on the hillside above the driftmouth by Garretson, and was supposed to stop about thirty feet therefrom, where it was worked up, but this piece was going very fast, and ran out of the usual way and over a point of land, instead of following the hollow, as the others had done; and this was the first piece that had done so. This work was being done by Garretson under a contract with the defendant company, by which Garretson was to get out props and cross-ties for so much per peice, and caps for so much per hundred, to be delivered by him to the various driftmouths of the mine. Under this contract, Garretson was responsible to the defendant only for results—that is, the defendant had no control over cutting the timber, and so long as it was furnished in a satisfactory manner, Garretson was to receive a stipulated price per piece for it, and if the timber was not gotten according to contract, the defendant had a right to cancel it. Garretson had the privilege of getting timber anywhere on the lease of the defendant; he was not restricted to any point, and the manner of delivery was left with him, and he employed his own help in doing so, without, in any wise, consulting the defendant. He had cut timber all around the driftmouth where the accident occurred. It is not shown that the defendant company knew that Garretson and his brother were at work above the driftmouth, or that they were, in fact, working at all on the day the accident occurred. So far as the record discloses, no one but themselves knew that they were so at work, and under the contract Garretson chose his own time to work, only being responsible for the delivery of the timber cut by him in quantities as needed.

We deduce from the evidence that it does not show that the relation of master and servant existed between the com-

pany and Garretson, but, on the other hand, it appears that Garretson was exercising an independent employment, over which he had exclusive and absolute control. While it is true he stated in his evidence that he was doing this work under the control of the defendant, yet, when he states the terms of the contract, it is apparent that this statement is not entitled to the consideration which the defendant in error attempts to give it, for by the terms of the contract as given by him, which do not substantially conflict with the evidence of the defendant, it is clearly shown that the work being done by him was that of an indepenent contractor, and that it was not under the control of the company. The company had no power to control him in the execution of this work, and the only power it reserved to itself in regard to it, was the right to cancel the contract if not complied with by Garretson. It had no right to direct when the timber should be gotten out and delivered, or when it should be delivered. It only stipulated with Garretson that it would pay a certain price per piece, and that he should procure the timber at such time as the company needed it. No supervision of his work was reserved by the company. He had exclusive power to select any one to assist him in carrying out his contract, and had the right to procure this timber from any point upon the lease of the company. The law is now well settled that the employer of one who exercises an independent employment, over which the employer has no control, is not responsible for the negligence of one in such employe's service or to third persons injured by reason of the negligent acts of the employe or his servants, if, however, the employer has used reasonable care to select a contractor of proper skill and prudence. While this doctrine is well settled, it will not be amiss to give what some of the eminent law writers say upon this subject, and to show by the decisions of many states that what they have said is sound. Thompson, in his work on Negligence, volume 1, section 621, lays down the general rule to be: "It is a general rule that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work not in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control except as to the results

of his work, and subject to other qualifications hereinafter stated,—will not be answerable for the wrongs of such contractor, his subcontractor or his servants, committed in the prosecution of such work." And in the following section, 622, it is again stated: "An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The contractor must answer for his own wrongs and the wrongs committed in the course of the work by his servants. In every case, the decisive question is, Had the defendant the right to *control*, in the given particular, the conduct of the person doing the wrong? Does he reserve to himself the essential powers of a master? It is but another form of language, expressing the same idea, to say that the true test to determine whether one who renders service to another does so as a contractor, or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the *means* by which it is accomplished. On this question, the contract under which the work has been done must speak conclusively in every case, reference being had, of course, to surrounding circumstances." And, also, we find in 16 Am. & Eng. Ency. Law, (2d Ed.), 187, the law to be announced as follows: "Generally speaking, an independant contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished." Also, same volume, on page 188, it is said: "A reservation by the employer of the right by himself or his agent to supervise the work for the purpose merely of determining whether it is being done in conformity to the contract does not affect the independence of the relation."

In Shearman and Redfield on Negligence, vol. 1, section 164, it is said: "The true test of a 'contractor' would seem to be, that he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is accomplished. The mere fact of direction as to things to be done, without control over the method or means

of doing them, does not make a contractor a servant." And we also quote from section 166: "It is now practically settled that the reservation, in a contract, of the right to inspect the work at all times and to have it done subject to the approval of the employer, without any right to dictate the details or methods or to interfere with servants, does not make the contractor a servant;" and in section 168 it is said that the employer is not liable for the contractor's negligence: "It appearing, from the definition which we have given of a contractor, that he is not the agent or servant of his employer in relation to anything but the specific results which he undertakes to produce, it follows that his employer is not responsible to third persons for his negligence, nor for the negligence of his servants, agents, or subcontractors in the execution of the work."

Mechem, in his work on Agency, section 747, says: "The principal's liability for the acts of his agent, within the scope of his authority, depends upon the fact that the relation of principal and agent exists. It is the principal's will that is to be exercised; his purpose that is to be accomplished; his are the benefits and advantages which ensue. He selects his own agent, puts him in motion, and has the right to direct and control his actions. It is, therefore, just and proper that he should be responsible for what the agent does while so employed. Where, however, the principal has not this right of control a different rule prevails. Neither reason nor justice requires that he should be held responsible for the manner of doing an act when he had no right or power to direct or control that manner. If, therefore, the principal, using due care in the selection of the person, enters into a contract with a person exercising an independent employment, by virtue of which the latter undertakes to accomplish a given result, being at liberty to select and employ his own means and methods, and the principal retains no right or power to control or direct the manner in which the work shall be done, such a contract does not create the relation of principal and agent or master and servant, and the person contracting for the work is not liable for the negligence of the contractor, or of his servants or agents, in the performance of the work. The employment is regarded as independent where the person renders service in the course

of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.

In *Emerson* v. *Fay*, 94 Va. 60, it was held that a person employed to construct a building, with materials to be furnished by the owner, and according to certain plans, who was to receive in payment a per diem for himself and the other men engaged in the work, who were to be paid by him, is an independent contractor, and occupies the relation of master to such employes, for whose negligence the owner is not liable—the work contracted for being lawful.

In *Bibb's Admr.* v. *N. & W. R. Co.*, 87 Va. 711, which was an action to recover damages for the death of the plaintiff's intestate, caused by the collapse of a bridge on which he was working, the court held that where an employer selects with due care a competent contractor, and commits to him a work that is lawful, and such as may be done without injury to third persons, and to be done in a workmanlike manner, at a stipulated price, such employer cannot be held liable for injuries caused by the negligence of such contractor or his servants to third persons.

In *Carter* v. *Berlin Mills Co.*, 58 N. H. 52, (42 Am. Rep. 572): A. contracted to have B. cut timber on A's land, at a certain price per foot, and deliver it at the mouth of a river, using A's dams for driving the logs, if he chose. By B's unreasonable use of A's dam, C's lands were flooded, but A. had nothing to do with cutting or driving the logs, and it was held that A. was not liable for C's injury.

In *Boomer* v. *Wilbur*, 176 Mass. 482, the owner of buildings employed a competent independent contractor to repair the chimneys of their buildings, who was to do the work without supervision of the owners over the details of the work, or the manner in which it should be done, and it was held that they were not liable to a person who was injured on the street by falling bricks, caused by the contractor's negligence.

In *Harrison* v. *Collins*, 86 Pa. St. 153, (27 Am. Rep. 699), the owner of a sugar refinery employed a rigger to remove

machinery from a railroad car to the refinery. In doing the work, the rigger opened a coal hole in the sidewalk, and left it open a few minutes after the work was finished. A lad fell into the hole and was injured. The rigger was paid by the day. The court held that if one renders services in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means of accomplishment it is an independent employment—the fact that the contractor is paid by the day is immaterial.

In *Harris* v. *McNamara*, 97 Ala. 181, the court held an ore digger, who furnishes his own tools and appliances, who employs and pays his own assistants, and who is paid by the mine owners a certain sum per car for ore mined by him, is not a servant of the mine owners, but an independent contractor, as the means and details of the execution of his work are subject to his own exclusive control and management; and hence the wrongful employment of an infant by the ore digger does not render the mine owners liable to the infant's parents for his death.

It was held in *St. Louis, &c., Ry. Co.* v. *Yonley*, 53 Ark. 503, that a person employed by a railroad company to clear off and burn the rubbish from its right of way at so much per mile, who hires, pays and controls his own help, is not a servant of the company, but an independent contractor; and the railroad company was not liable for damage caused by the spread of fire, owing to the negligence of the contractor and his employes.

In the case of *Town of Pierrepoint* v. *Loveless*, 72 N. Y. 111, mill owners who had severally placed saw logs on the ice in the Racket river, severally contracted with S. to drive and put them in the respective booms. Other parties also placed logs there, and employed servants to drive them down. The logs all got mixed in driving; and by the negligence of the drivers, a jam was formed, which carried off a bridge. It was held, in an action by the town to recover damages, that S. was not a servant, but an independent contractor, for whose negligence those so contracting with him were not answerable.

In *McCarthy* v. *Second Parish of Portland*, 71 Me. 318, the plaintiff was injured by the carelessness of men occupied

in repairing the roof of defendant's building. The work was being done by men who were employes and under the orders of one who carried on the business of slating roofs, and who was engaged to do the work in question. It was held that the slater carried on an independent employment, and the defendant was not liable.

Chief Justice Bigelow, in *Brackett* v. *Lubke*, 4 Allen 138, says: "If the person employed to do the work carries on an independent employment, and acts in pursuance of a contract with his employer, by which he has agreed to do the work on certain specified terms, in a particular manner and for a stipulated price, then the employer is not liable; the relation of master and servant does not subsist between the parties, but only that of contractor and contractee. The power of directing and controlling the work is parted with by the employer and given to the contractor. But on the other hand, if work is done under a general employment, and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable, because he retains the right and power of directing and controlling the time and manner of executing the work, or of refraining from doing it if he deems it necessary or expedient."

In *Cincinnati* v. *Stone*, 5 Ohio St. 38, it was declared that the principle of *respondeat superior* does not apply to cases of independent contracts not creating the relation of principal and agent, and where the employer does not retain the control over the mode and manner of the performance of the work under the contract. To the same effect is *Gwathney* v. *Little Miami R. R. Co.*, 12 Ohio St. 92.

In *Corbin* v. *American Mills*, 27 Conn, 274, it is said, to render the employer liable, "the employe must be acting at the time strictly in the place of the employer, in accordance with and representing the employer's will and not his own; and the business must be strictly that of the employer, and not in any respect the employe's."

In *Wood* v. *Cobb*, 13 Allen 58, the court said it is too well settled to admit of debate, that the employer of one who exercises an independent employment, is not responsible for the negligence of one in the latter's service.

In *Pearson* v. *Cox*, 2 C. P. Div. 369, a tool, called a straightedge, was jostled out of a window of a house that was being

built, and fell upon the plaintiff and injured him; but it appearing that the act which caused the straightedge to fall was the act of one of the men employed by the mason, a subcontractor, the court held that the builders of the house were not liable.

It must be borne in mind that in the selection of the independent contractor, the employer is charged with the duty of exercising reasonable care to secure a person of skill and prudence, and the work to be done must not be, within itself, unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual dangers, when being prosecuted in the ordinary and usual manner. Thompson on Negligence, sec. 645, says: "The modern doctrine seems to be that if one engages with a contractor to do an act which may be done in a lawful manner, and the contractor in doing it *unnecessarily commits a nuisance,* whereby injury results to a third person, the employer will not be liable. In other words, if the act or neglect which produces the injury is purely collateral to the work contracted to be done, and entirely the result of the wrongful acts of the contractor and his workmen, the proprietor is not liable; but if the injury directly results from the work which the contractor engaged and was authorized to do, he is equally liable with the contractor."

It will be observed that the author, in the concluding part of this section, says: "but if the injury directly results from the work which the contractor engaged and was authorized to do, he is equally liable with the contractor." This means where the work itself is of such dangerous character as that injury may result therefrom, notwithstanding its accomplishment is unattended with negligence, and though it be done with prudence and care, and does not apply where the work to be done is not of itself dangerous to others, unless it becomes so by the negligent or unskillful manner of its execution. *Davie* v. *Levy & Son,* 39 La. 551; *Hundhausen* v. *Bond,* 36 Wis. 39; *Chicago City* v. *Robbins,* 67 U. S. 418; *Robbins* v. *Chicago City,* 71 U. S. 667; *O'Rourke* v. *Hart,* 7 Bosw. (N. Y.) 511.

There is no complaint that the company did not exercise reasonable care and prudence in the selection of a competent and proper contractor. But it is claimed the evidence does.

not show that Garretson was an independent contractor, but that, on the other hand, it appears therefrom that he was a servant of the company. When we apply the law to the facts of this case, there can be no other conclusion reached, as we have observed, than that he was an independent contractor, and that the relation of master and servant did not exist between him and the defendant.

The defendant in error insists that it was the duty of the company to provide a safe place for him to work, and in this it failed to discharge its duty, because the place at which he was employed to work was rendered unsafe on account of the work which was being done in getting out the timber. It is an elementary rule of law that the master must exercise reasonable care to furnish and continue to provide a reasonably safe place for his servants to work, and this is a duty which is imposed upon the master, and which cannot be delegated by him to others to the extent of relieving him from liability for a failure to discharge it. This rule of law is not questioned, but it cannot be applied here. There is no question that the mine at which the plaintiff was employed to work was in a perfectly safe condition—in fact, the injury was not caused from any mismanagement of the mine or from any result proceeding from its operation, but it was the result of the act of one whose business was entirely separate and distinct from that being carried on in which the plaintiff was employed to assist. There was no connection between the operation of the mine and the procurement and delivery of the timber. It is true the timber was used in the mine, but because of this it cannot be said that the work of procuring it was in any way connected with the actual operation of the mining enterprise, even if this would alter the case. The act of cutting and delivering the timber did not render the place at which the plaintiff was employed to work, unsafe, because if the timber had been secured in a proper manner, and without negligently skidding it down the hill, the injury would not have occurred. It was the negligent manner of prosecuting the work in delivering the timber that caused the injury, and not the lack of safety of the place at which the plaintiff was employed to work.

As the case now stands, all we have to inquire is, whether judgment should be entered for the defendant here, or should

the case be remanded for a new trial. We have determined that the evidence is wholly insufficient to sustain the verdict of the jury, and, from the very character of the case, we can see that a new trial can avail the plaintiff nothing. Therefore, under such circumstances, it would seem entirely unnecessary to remand. Litigation should be speeded, and its termination quickly reached, and to bring about this end, frivolity and idle practices should be discountenanced. In *Maupin* v. *Insurance Co.*, 53 W. Va. 558, it was made a query: "If the Supreme Court holds that a verdict for the plaintiff is without sufficient evidence, or contrary to the evidence, and reverses the judgment for that cause, will it grant a new trial or enter judgment for defendant?" This was not decided in that case. Neither is it necessary to decide it here, because, as we have observed, at the conclusion of the plaintiff's evidence, a motion was made to exclude it, which the court overruled. "If a defendant, giving no evidence, moves the court to exclude the plaintiff's evidence as not sufficient to warrant a verdict for plaintiff, or to direct a verdict for him, and his motion is overruled and this Court reverses the judgment for that cause, it will not remand the cause for another trial, but will enter judgment for the defendant, or, as it chooses, direct the circuit court to do so, unless satisfied that it will work injustice." *Maupin* v. *Insurance Co.*, 53 W. Va. 558. This rule should not be different where the defendant does introduce evidence, where all the evidence taken together, does not entitle the plaintiff to recover. There is no reason for such difference. The fact of the introduction of testimony by the defendant has not changed the status of the case. The court is asked to exclude the evidence, and improperly refuses to do so, and because the defendant attempts to strengthen his case, he should not lose the benefit of his motion, especially in so far as he is entitled to have judgment entered for him in this Court, on the ground that he made such motion and it was overruled. It is true we have cases holding that where the defendant introduces evidence, after his motion to exclude is overruled, the error, if any, by reason thereof, is waived, but this rule cannot be applied where the evidence of the defendant, when introduced, does not strengthen the plaintiff's case, and when, taking the whole evidence together, the plaintiff is not enti-

tled to recover. In *Core* v. *Ohio River R. Co.*, 38 W. Va. 456, it was held that if the defendant, after the court had overruled its motion to exclude the plaintiff's evidence, on the ground of insufficiency, introduces its evidence, this Court will disregard such motion and will not reverse the judgment, unless it appears that the whole evidence is insufficient to justify the verdict of the jury. And in the case of *Trump* v. *Tidewater Coal and Coke Co.*, 46 W. Va. 238, it is said that a motion to exclude the plaintiff's evidence for insufficiency is waived by the defendant after such motion is made introducing his evidence, as his evidence may cure the defects of the plaintiff's. Where, however, there is not sufficient evidence to support a finding for the plaintiff, there is no reason to say that this Court should not, when such motion is made and overruled in the court below, give judgment for the defendant here, when it was the duty of the court below to have excluded such evidence, and rendered judgment for him. But, again, at the conclusion of all the evidence, the defendant asked the court for a peremptory instruction, directing the jury to find a verdict in its favor, which instruction the court refused. The offering of this instruction was equivalent to a demurrer to the evidence. *Maupin* v. *Insurance Co.*, 53 W. Va. 558. It was the duty of the court to give this instruction, and enter judgment for the defendant, and not having done so, it is now proper for this Court to do what the court below should have done.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and judgment is entered for the defendant.

*Reversed, and Judgment Rendered.*