# CHARLESTON.

B. HAMPTON GRAY, *Administrator v.* N. & W. RAILWAY
COMPANY

(No. 4874)

Submitted May 30, 1924.   Decided June 9, 1925.

1.  RAILROADS—*Crossing Tracks Without Using Ordinary Care
    Contributory Negligence, Though Statutory Signals Not
    Given.*

    It is contributory negligence such as will bar recovery for
    one to cross the tracks of a railroad company at a public
    crossing without using ordinary care and caution for his
    own safety, notwithstanding the signals required by statute
    are not given.   (p. 579).

2.  SAME—*One Crossing Tracks at Public Crossing, Must Look
    and Listen.*

    One crossing the tracks of a much used railroad, at a pub-
    lic crossing, must look and listen for an approaching train
    before he enters upon said crossing; these duties must be
    observed by him and he should use reasonable care to do so,
    at a point where such observance may be reasonably ef-
    fective.   (p. 579).

3.  JUDGMENT—NEW TRIAL—*If Verdict Not Justified by Evi-
    dence, Judgment Notwithstanding Verdict Should Not be
    Rendered, Unless Pleadings Justify it, But New Trial Will
    be Granted on Motion.*

    Where the court comes to the conclusion that the evidence
    in a civil case is not sufficient to justify the verdict of the
    jury, a judgment *non obstante veredicto* should not be ren-
    dered, unless the merits of the case as disclosed by the plead-
    ings justify such judgment, but a new trial will be granted
    upon motion of the party adversely affected by such verdict.
    (p. 581).

4.  RAILROADS—*One, Whose View is Obstructed by Train, Must

    · Where one desires to cross the tracks of ·a railroad at a
    public crossing, and a train passing on one track temporarily
    obstructs his view of the next track, it is his duty to wait
    until such temporary obstruction has disappeared. (p. 580).

5. SAME—*Failure to Give Signals Does Not Absolve Traveler From Duty to Use Ordinary Care.*

> While it is actionable negligence for the servants of a railroad company to fail to give the signals as required by statute while approaching a public crossing of its tracks, such failure to observe the law upon the part of the servants of the railroad company does not absolve a traveler from his duty to use ordinary care and caution for his safety before attempting to cross the tracks of said railroad company at such crossing. (p. 580).

Error to Circuit Court, McDowell County.

Action by B. Hampton Gray, as administrator of W. T. Tomlinson, deceased, against the Norfolk & Western Railway Company. Judgment for defendants notwithstanding verdict for plaintiff, and plaintiff brings error.

> *Reversed and remanded for new trial.*

*Taylor & Taylor and Harman & Harman,* for plaintiff in error.

*F. M. Rivinus* and *Strother, Sale, Curd & Tucker,* for defendant in error.

McGINNIS, JUDGE:

On September 28, 1920, W. T. Tomlinson was accidentally killed on a railroad crossing by a west bound work train of the Norfolk and Western Railway Company. The engine of said work train was operated by John W. Kidd as engineer and C. R. Boyd as fireman. A suit was instituted, by B. Hampton Gray, as administrator of said Tomlinson, against said Railway Company, John W. Kidd and C. R. Boyd, and on February 20, 1922, a verdict was rendered in favor of the plaintiff against said defendants for $7500.00 for negligently causing his death which verdict was, on motion of the defendants, set aside by the lower court and judgment entered for the defendants, and this writ of error was awarded to that judgment.

The negligence charged in the declaration is the failure of the defendant to give the signals required by the statute to be given at railroad crossings. The accident occurred at a point where the west bound track of said railroad company crosses the public road leading from Davy to Welch, and

about 200 feet east of the station at Davy in McDowell Coun-
ty, at which point there are three parallel tracks of said com-
pany extending practically east and west; each of which is
practically straight in each direction for approximately 800
feet looking east from the crossing where the accident oc-
curred, and over 1000 feet looking west from that point. These
tracks are designated as "the east bound track," "west
bound track", and "house track" or "station siding". Be-
fore the accident occurred, an east bound local train had
pulled· east to a switch and partly backed in from the east
bound track, but the local train did not clear the east bound
track and the crossing, it was cut in two at the crossing to
allow the mail carrier to cross from the north side of the track
to the station on the south side of same. ⁕While this east
bound track was blocked by the local train, an east bound
freight train known as the "Spice Creek Shifter", consisting
of twenty-seven coal cars and two engines, one in front and
one in the rear of same, pulled up to a point near the crossing
and stopped to wait the clearing of the track by the local, and
while this east bound shifter was standing on the track west
of the crossing, another east bound freight train drawn by a
Mallet engine pulled up to a point in the rear of this shifter
and stopped. Tomlinson, driving a Ford Car, approached
these tracks from the south side at the time the crossing was
blocked by the local, and stopped at a point where his view
of the West bound track was obstructed by a small tool
house situated about 15 feet from the house track. From that
point where Tomlinson stopped to the crossing, the road bears
to the west at an angle of about 45 degrees till the crossing
is reached, and then turns north at about right angles to the
track. The jury found, in answer to the interrogatory: "Do
you find that the local on the siding split the crossing at the
time Tomlinson crossed?" replied "No." There were sev-
eral interrogatories submitted to the jury, only one other
of which we deem it necessary to consider, the substance of
which is: "Do you find that Tomlinson crossed over the track
immediately after the freight train on the east bound track
cleared the crossing?" to which interrogatory the jury an-

swered, "No." We are not of the opinion that, in the light of the facts and surrounding circumstances at the time of the accident, Tomlinson was guilty of such negligence himself as would bar recovery notwithstanding the negligence shown upon the part of the defendants. However, the defendants say that they were not negligent, that the signals were given and that by reason of the east bound shifter obstructing their view from the engine they could not see Tomlinson when he started across the tracks, and could not have prevented the accident. On the question of whether or not the signals were given, one witness testifies that they were not given, and eleven witnesses testify that they were given, two of whom were coal miners and were at work on a coal tipple near the track east of the crossing. The other witnesses were employees on the four trains mentioned, engineers, conductors, firemen and brakemen. Nevertheless this was a question for the jury and thus the negligence charged was passed upon by the jury and decided in favor of the plaintiff. However this negligence of the defendant did not relieve the deceased from the use of ordinary care and caution while crossing these three railroad tracks. If he attempted to cross while the view of the west bound track was unobstructed, his negligence is apparent. There was no reason for his driving upon this west bound track at a time when this west bound work train, which caused his death, was practically at the crossing, and in plain view as shown by the map and photographs filed as evidence. He had to cross two tracks and the space between them before he reached the west bound track upon which the accident occurred and the west bound track was in plain view as soon as he came from behind the tool house, and if he had looked then to the east his view was unobstructed for approximately 800 feet and within which distance the train which killed him was evidently running at the time he started across the tracks and could have been plainly seen by him if he had looked. Had he attempted to cross after the east bound train had cleared the crossing and before it had gone far enough east so as not to obstruct his view of the west bound track, he would have been guilty of contributory negligence such as to bar his recovery in this case.

The laws for the protection of travelers using railroad crossings, requiring signals to be given and the distance they must be given from the crossing and requiring them to continue said signals for a sufficient time and distance to give notice to persons desiring to use the crossing, were made to be observed by the servants of a railroad company, and their failure to so give, and continue to give signals as so required, is negligence upon the part of the railroad company and its servants, but there are certain duties required of a traveler desiring to use said crossings. He must use at least ordinary care and caution for his own safety, notwithstanding the servants of the railroad are negligent in failing to give the signals as required by law. He cannot rely solely on such failure. He must look and listen before entering upon the crossing, and these duties must be observed by him, and he should use reasonable care to do so at a point where such observance may be reasonably effective. This man Tomlinson lived in Davy and on the south side of these tracks and was evidently familiar with the railroad tracks at the crossing, and the frequent passing of trains over said tracks. From the map in evidence, it appears that this crossing is the only crossing from the south side of the said town, and that the main business part of the town is on the north side of the tracks, and we may assume that Tomlinson was familiar with the tracks at the crossing as well as the frequent passing of trains over them.

There are three theories relating to the situation of these trains at the time Tomlinson started to cross the tracks, each of which theories is supported by some evidence. One theory is that the local train "split" the crossing and Tomlinson started across at a time when the train was thus separated. One witness testifies that this was the situation at the time he started to cross. This theory is against the weight of the evidence and against the finding of the jury as above stated. Another theory is that this local train was coupled up and had backed into the siding so as to clear the crossing, and while this east bound shifter was still standing west of the crossing, the defendant started across these tracks, at a time when there was nothing to obstruct his view of the west bound

track. The other theory is that he started across the tracks immediately after this east bound shifter had cleared the crossing. If the second theory is correct, Tomlinson drove his car in front of the west bound work train at a time when the west bound track was in plain view and the train which struck and killed him was plainly within his vision, and for that reason his contributory negligence in failing to look and listen for the approaching train, bars the right of his administrator to recover in this case.

The principles laid down in the case of *Beyell* v. *Railway Company*, 34 W. Va. 538, seems to have been followed by this Court in many cases, and in that case the court held: "Failure to ring a bell or·blow a whistle on an engine, as required by the Code, chapter 51, section 61, is negligence for which a railroad company is chargeable; but this does not excuse the traveler on a highway crossing a railroad track from the exercise of such reasonable care and caution as the law requires, to ascertain whether a train is approaching the crossing." The following are some of the cases that follow this rule: *Barsford, Administrator* v. *Railroad Company*, 70 W. Va. 280; *Cline* v. *McAdoo*, 85 W. Va. 524; *Robinson* v. *Railway Company*, 90 W. Va. 411; *Cavendish* v. *Railway Company*, 121 S. E. 498.

If, on the other hand, he waited until this shifter cleared the crossing and then immediately started across the tracks, his view of the west bound track was obstructed by this shifter which was a long coal train of twenty-seven cars and two engines, one in front and one in the rear. If his view of the west bound track was obstructed by this freight train when he started across he should have waited until it had gone east a sufficient distance for him to see the west bound track: "If a train passing upon one track temporarily obstructs the view of the next train, it is the duty of the one desiring to cross, to wait until the temporary obstruction has disappeared." *Laun* v. *Railway Company*, 139 N. Y. App. 452; *Wilmouth's Administrator* v. *Railway Company*, (Va.) 99 S. E. 665; *Heaney* v. *Railway Company*, 112 N. Y. 122; *Gasser* v. *Railway Company*, 109 Atl. 760; *Smith* v. *McAdoo*, (Pa.) 109 Atl.

759; *Railway Company* v. *Mardment,* 168 Fed. 21; *Railway Company* v. *Paine,* 188 S. W. 1033.

We are therefore of the opinion that the lower court did not err in setting aside the verdict; but we are of the opinion that it did err in entering judgment for the defendant. The lower court doubtless came to the conclusion and rightly so, that the verdict was not supported by the evidence, and having arrived at this conclusion, the verdict should have been set aside and a new trial awarded. "In a civil suit judgment will not be rendered *non obstante veredicto* unless the merits of the case as disclosed by the pleadings, justify such judgment. Where a conclusion as to the rights of the parties involves a consideration of the evidence, and the court comes to the conclusion that the jury's verdict is not supported thereby, a judgment *non obstante verdicto* will not be rendered, but a new trial will be granted upon motion of the party adversely affected by such verdict. So far as they hold contrary to the above doctrine, the cases of *Maupin* v. *Insurance Company,* 53 W. Va. 557; *Anderson* v. *Tug River Coal and Coke Company,* 59 W. Va. 301; *Ruffner Brothers* v. *Insurance Company,* 59 W. Va. 432; *McMillan* v. *Coal Company,* 61 W. Va. 531; and *Weeks* v. *Railway Company,* 68 W. Va. 284, are overruled." *Dunbar Tire and Rubber Company* v. *R. W. Crissey and J. H. Riley,* 92 W. Va., 419. Further comment is unnecessary.

We therefore reverse the lower court, set aside the judgment, and remand the case for a new trial.

*Reversed.*

NOTE by WOODS, JUDGE:

The foregoing opinion was prepared by Judge McGINNIS while he was a member of this Court and withheld pending the determination of cases involving questions similar to those decided here. It is now here presented and adopted in its entirety as the opinion of this Court.