NOLA CLISE *v.* JOHN PRUNTY

(No. 7046)

Submitted March 30, 1932. Decided April 19, 1932.

*Russel L. Furbee* and *C. Brooks Deveny,* for plaintiff in error.

*Victor H. Shaw,* for defendant in error.

MAXWELL, JUDGE:

Defendant prosecutes this writ of error to a judgment of the circuit court of Marion County predicated on a verdict for $8,000 against him and in favor of the plaintiff.

The plaintiff, her husband and their nephew, then ten years of age, were guests in the defendant's automobile. The party

was en route on Christmas, 1927, from the town of Everson to the city of Keyser, both in the state of West Virginia. From Everson they proceeded in a northerly direction into the state of Pennsylvania, thence eastwardly on the National Pike, expecting to re-enter West Virginia before reaching their journey's end. After they had passed the top of Summit Mountain and were on a slight descent (in Pennsylvania), on a section of the road which was comparatively straight for several hundred feet, the seven-passenger automobile in which they were traveling encountered sheet ice causing it to slip from the road and overturn, with resultant injuries to the plaintiff. At the time of the accident the automobile, in second gear, was moving at the rate of about 18 miles per hour.

The negligence on the part of the defendant alleged by the plaintiff and relied upon by her as the basis of recovery is averred in her declaration to be: (1) defective brakes; (2) failure of defendant to have non-skid chains on the tires at the time of the accident; (3) failure to use due care in the manner of driving the automobile immediately prior to the accident and at the time thereof.

This is the second time this case has been in this Court. On the first review we reversed a judgment for $900.00 in favor of the plaintiff. *Clise* v. *Prunty,* 108 W. Va. 635, 152 S. E. 201. As stated in the opinion the negligence upon which the plaintiff at that time sought to predicate recovery was "the driving of the car without chains and with defective brakes." Judge Hatcher, speaking for the Court, stated in the opinion: "She had adequate opportunity to protest the condition of the brakes and the absence of chains if she had so desired. As a guest she was not required to exercise the same degree of care for her safety as the driver of the automobile. But she could not shunt the entire responsibility upon him. She herself should have exercised ordinary care for her own welfare. If she knew or by due diligence should have known that defendant was not taking proper precautions, it became her duty to remonstrate. Where possible danger is reasonably manifest to an invited guest, and she sits by without warning or protest to the driver and permits

herself to be driven carelessly to her own injury, she becomes a co-adventurer in the risk and is thereby barred of recovery. *Hardie* v. *Barrett*, 257 Pa. 42, 46; *Munnich* v. *Transit Co.*, 267 Pa. 200; *Nutt* v. *R. R. Co.*, 281 Pa. 372, 377-8.''

There is no appreciable difference in the present record and the former one with respect to alleged defective brakes and the absence of chains. The first decision is the law of the case with reference to those matters, and they will not on this review be further discussed. (It should be noted, however, that there is no evidence tending to show that the accident was due to alleged defects in the brakes.)

As to the manner in which the defendant was driving immediately before the accident, the evidence is more in detail on the second trial than it was on the first. The difference, however, is to be found only in the testimony of the defendant. At the first trial he testified in his own behalf and only to the proposition that Mrs. Clise, some time before the accident, requested him to take her to her mother's home at Keyser. At the second trial he was called as a witness for the plaintiff and testified at length with reference to the accident and to the manner of driving immediately preceding the accident. He said: ''We was noticing the snow on the trees along, occasionally. * * * We noticed the snow on the trees all along as we went.'' In response to a question on cross-examination as to whether he was paying attention to the road just prior to the accident, he said: ''Part of the time I was and part of the time I would look over at the trees. Where you could see a nice view, you would look.'' In response to a question on direct examination as to whether he was looking at the snow on the trees when he came to the place where the accident occurred he said: ''Well, I was looking at the snow, partly. You couldn't discover that ice until you hit it.'' Further: ''Q. If you had been looking ahead at the snow while you where driving, I will ask you if you could have seen this place where you went off of the road? A. Well, I might. Q. In time to stop your car before you got to it? Is that true? A. Yes I expect it is. Q. How is that? A. Yes, I expect it is true. The ice was a whole lot the color of the road. It was pretty hard to tell

too. Q. But you say you were looking off at the scenery before this accident? A. Yes sir, some, yes sir, occasionally. Q. Well were you looking at the scenery immediately before the accident? A. Just a little bit before. Q. If you had been looking at the road, could you have seen the ice in the road before the car went off? A. Yes sir. It was almost the color of the road. I don't know whether you could have saw it or not; it was almost the color of the road, that ice, and awfully slick too. * * * Q. Mr. Prunty, how far back could you have seen this ice in the road if you had been looking at the road? A. I could have saw it 300 feet or more I expect." On cross-examination: "Q. You were following a car? A. Yes sir. Q. How close to it were you? A. 100 feet back. Q. Then you couldn't have seen the ice more than 100 feet away? A. I don't know whether I could or not have seen the ice that far or not."

It is to be noted that the defendant does not admit that he was looking at the scenery at the time the car started to skid. The most he admits is that he had been looking at the scenery. His statement that the ice was about the color of the road and that you could not discover it until you hit it is not contradicted by any one and is supported by the testimony of the plaintiff's husband, who was riding on the front seat with the defendant. On direct examination the husband testified that he did not notice the ice until the automobile came close to it, thirty-forty of fifty feet away. On cross-examination he admitted that on the first trial he stated that he did not notice the ice until they were "right on it". Further, on cross-examination second trial: "Q. When you testified in May, 1929, (the first trial) and you said 'right on it', did you mean forty or fifty feet? A. Yes sir. That would be right on it, wouldn't it, a car traveling at any speed at all?"

Was the defendant guilty of negligence in his manner of operating the automobile? He was driving slowly in second gear. Those facts show caution, not negligence. While he admits that he had been looking at the scenery, it is not admitted or proved that he was looking at the scenery at the time the car started to skid, or that the fact that he had been

looking at the scenery had anything to do with the car's slipping on the ice and the resultant accident. Therefore, the fact that he, along with the other persons in the car, had been looking at the scenery prior to the accident must be eliminated from the equation.

The problem which remains is in double aspect. First, was the defendant negligent in driving the automobile upon the ice thus affording opportunity for the machine to slip and cause the accident? Second, if the defendant was guilty of negligence in so doing, was the plaintiff guilty of contributory negligence?

It does not follow from the mere fact of the happening of an unfortunate automobile accident that the operator was guilty of negligence thereby affording basis of recovery by an injured guest. As stated in the first opinion, the legal problems attendant upon this accident must be determined in the light of Pennsylvania law pertaining to such matters. (Ours is in accord.)

As noted also on the first review of this case, if there was any negligence on the part of the defendant in operating his car with the brakes in an imparied condition or in operating it without non-skid chains on the wheels, the plaintiff knew about those conditions, and if she failed to protest she cannot complain of injury which later arose. As already observed, that holding constitutes the law of this case and those matters are eliminated from present consideration. Leaving them out of the problem, what did the defendant do that he ought not to have done, or what did he leave undone which he should have done, therby causing the accident? If the evidence disclosed that the accident was caused by his carelessly looking at the scenery of the mountains when his gaze should have been directed to the highway in front of him, his negligence would be clearly established and liability would follow as a matter of course if the plaintiff was not contributorily negligent. But, as already stated, such is not the testimony, and that phase is eliminated. Again, if the sheet of ice on which the automobile slipped was plainly visible for considerable distance in the direction from which the car was approaching, and its probably dangerous nature was reasonably

apparent, and the defendant failed to see the ice or to comprehend the dangerous situation, when he ought to have done so, and as a result of such conduct the accident followed, he would be responsible in damages for the resultant injury to the plaintiff, if she did not by her conduct contribute to her own injury. But as is disclosed from the testimony of the defendant and that of the plaintiff's husband, above quoted, it does not appear that the ice could have been seen at any considerable distance before it was reached or that the danger in attempting to pass over it was manifest. Another automobile preceding the defendant's automobile at a distance of about one hundred feet and plainly in view of the defendant and his guests crossed safely over the ice which caused the defendant's car to slide. Though there were occasional patches of snow on the road that day, the defendant's automobile had proceeded to the place of the accident without difficulty. The emergency came suddenly and unexpectedly. In such situation, negligence cannot be imputed to the driver of an automobile, if he acts as an ordinarily purdent man would be expected to act in such emergency. Ordinarily, of course, such matters are for jury determination, but ''if the undisputed facts show the injury to be accidental, and without negligence, liability should not be imposed merely because loss has been sustained.'' *Ferrell* v. *Solski*, 278 Pa. St. 565. In that case a guest in an automobile was fatally injured when the car left the road after the front wheels had crossed a depression in the road. The rate of speed was not excessive. The court said the occurrence was not to be anticipated, and denied recovery to the personal representative of the deceased guest.

''Negligence cannot be imputed because of the failure to perform a duty so suddenly and unexpectedly arising that there is no opportunity to apprehend the situation and to act according to the exigency.'' *Eastburn* v. *United States Express Company*, 225 Pa. 33, 38, quoting and following *McKee* v. *Traction Company*, 211 Pa. 47, and later approved in *Post* v. *Richardson*, 273 Pa. 56.

''One who, in sudden emergency, acts according to his best judgment, or who, because of want of time in which to

form that judgment, omits to act in the most judicious manner, is not chargeable with negligence, and there is no liability for an injury inflicted by one upon another even though the injured person be free from fault, if the cause producing it was unusal, and one which reasonable and careful human foresight could not have foreseen and guarded against. If the defendant was not guilty of want of ordinary care, it must be considered an inevitable accident." *Leslie* v. *Catanzaro*, 272 Pa. 419, citing and following *Donahue* v. *Kelly*, 181 Pa. 93.

"The burden of proving actionable negligence is primarily upon the plaintiff, who must establish it by affirmative evidence showing more than a mere probability of a negligent act. Its existence cannot be left entirely to conjecture, and the tentative conclusion of juries based upon no sure grounds of inference cannot be upheld." *Baugher* v. *Harman*, 110 Va. 316.

"An owner or operator of a motor vehicle is not an insurer against injuries being caused by its operation but is liable only for negligence, and therefore an injury caused by the motor vehicle without any negligence or wrong on the part of, or attributable to, the owner or operator is regarded as an unavoidable accident, and neither the owner nor the operator is liable therefor." 42 Corpus Juris, page 889.

The application of this principle of law, thus variously and vigorously stated, precludes the plaintiff from recovery herein.

On the other hand, if this line of reasoning were not sound, and if it could with more propriety be said that the defendant was guilty of negligence in his manner of driving the car that day, prior to the accident, and that the occasional patches of snow on the road over which the automobile had passed were sufficient to put the defendant on guard that there was probable danger from slipping, the plaintiff is in no better position to recover under this aspect than she is under the one last above discussed; because she had the same opportunity for knowledge and the same knowledge of road conditions that morning as the defendant had, and if she saw fit to continue the journey, she did so as a co-adventurer, and

if accident resulted she must be deemed to have contributed thereto. She was occupying the full rear seat, reclining in pillows and robes, reading a book, just before the accident. She was leaving everything to the driver,—her own safety included. If he was proceeding negligently prior to the point of accident she should have protested, and her failure to do so encumbers her with contributory negligence. If the defendant was not proceeding negligently prior to the instant of the accident, he cannot be said to have been negligent when a sudden and unanticipated emergency arose, if he then acted as a reasonably prudent person would be expected to act in such emergency, and there is nothing to show that defendant did not so act. The plaintiff was not asleep as she and her companions came along their journey immediately prior to reaching the point of accident, but she was practically as oblivious to what was going on as though she were asleep. In the late Massachusetts case of *Oppenheim* v. *Barkin,* 262 Mass. 281, a sleeping guest was denied right of recovery for injury received in an accident. The essence of the decision is thus stated in the headnote of the case: "A guest of the driver of an automobile, who admits that, at the time of an accident in which he received an injury and for some time before, he was asleep on the back seat, knew nothing whatsoever about the journey, and was paying no attention to the road, cannot be found to have been in the exercise of due care and cannot recover in an action of tort against the driver of the automobile even if the driver were guilty of gross negligence." In *McDermott* v. *Sibert,* 218 Ala. 670, this terse statement is found: "It is the generally recognized rule that a person riding in an automobile driven by another, even though not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable or ordinary care to avoid injury; that is, such care as an ordinarily prudent person would exercise under like circumstances." And thus, in *Stephenson* v. *Sharp,* 222 Ky. 496: "What constitutes such ordinary care on the part of an invited guest in an automobile necessarily depends upon the facts and circumstances of each case. He cannot ignore

obvious dangers or intrust his safety absolutely to the driver when the same knowledge or means of knowledge of obvious or threatened dangers is possessed by both. He cannot idly sit by, close his eyes and ears to such dangers, and, in the event of an accident, hold his host liable in damages. He must use ordinary care for his own safety, and when his means of observing obvious dangers are the same as or better than those possessed by the driver and he fails to observe them, or, observing them, fails to warn the driver, he is guilty of contributory negligence.'' A passenger in a vehicle operated by another is bound to exercise ordinary care for his own safety. *White* v. *Portland Gas & Coke Company,* 84 Ore. 643. An automobile passenger who is injured in an accident may not recover for the injury if he has negligently abandoned the exercise of his own faculties and intrusted his safety entirely to the operator. Such passenger must use reasonable and ordinary care for his own safety. *Lambert* v. *Street Railway Company,* (Mass.) 134 N. E. 340. Though recognizing that the alleged contributory negligence of a guest in a vehicle is ordinarily a jury question, the substantive law of the proposition is thus stated in Huddy on Automobiles (9th Ed.), Vol. 5-6, section 138: ''It is well settled that a guest in an automobile must give some heed to his safety, and that ordinary care requires that he should maintain a proper lookout. A passenger cannot close his eyes to an obvious or well known danger, or entrust his safety absolutely to the driver. What constitutes a proper lookout depends upon the circumstances of the particular case.'' The statement of this text, the holdings of the cited cases and many more like them of other jurisdictions, and our own cases, are in entire conformity on the proposition that although the driver of an automobile owes to an invited guest reasonable care for his safety, the guest must exercise reasonable care for his own safety and his failure so to do precludes him from recovery. *Herold* v. *Clendennen,* 111 W. Va. 121, 161 S. E. 21; *Clise* v. *Prunty, supra.*

The exactitude of analysis and the careful scrutiny to which guest accident cases must be subjected is portrayed in

the recent Virginia case of *Boggs* v. *Plybon,* (Va.) 160 S. E. 77.

For the foregoing reasons and in the light of the author- ities cited we are of opinion to reverse the judgment and set aside the verdict.

It is urged by the defendant that we should render judg-ment here for him *non obstante verdicto* and not remand the case for new trial. Considering that this case has been twice tried and twice reviewed by this court, and that on each re-view the evidence has been found insufficient to support a verdict, for the plaintiff, there developed in conference a strong opinion that the case had been litigated enough, that the plaintiff is presumed to have made the best case she could, and having twice failed to establish a case sufficient to support a verdict, she should not be permitted to experiment further, and that we should terminate the matter here at this time. There are cases supporting this view. Typical among them: *Ry. Co.* v. *Morgart,* 56 Ark. 213; *Dick* v. *Swenson,* 137 Ill. App. 68; *Henry Lochte Co.* v. *Lefebvre,* 128 La. 108, 54 So. 578. In 4 Corpus Juris, at page 1185, we find the propo-sition thus stated: ''Where it is manifest that the ends of justice would not be promoted by remanding the case for a new trial, it is proper for the appellate court, on reversal, to render final judgment, or to order and direct the lower court to render final judgment. In other words, it is proper and permissible for the appellate court, on reversal, to render or direct final judgment, where there is nothing on which to ground further proceedings, or where, on another trial, the party against whom reversal is made could not strengthen his case by a proper amendment of his pleadings or by the introduction of new and additional evidence.''

The following rule formerly obtained in this jurisdiction: ''This court on reversing a judgment for the plaintiff, and setting aside a verdict, for insufficiency of evidence, and re-fusal of the trial court to exclude the evidence from the jury and direct a verdict for the defendant, will not remand the case for a new trial, but will render judgment for the de-fendant, when it does not appear that injustice will be done thereby.'' *Ruffner Bros.* v. *Insurance Co.,* 59 W. Va. 432,

53 S. E. 943. In accord: *Maupin* v. *Insurance Co.*, 53 W. Va. 557, 47 S. E. 1003; *Anderson* v. *Coal & Coke Co.*, 59 W. Va. 301, 53 S. E. 713; *McMillan* v. *Coal Co.*, 61 W. Va. 531, 57 S. E. 129; *Weeks* v. *Ry. Co.*, 68 W. Va. 284, 69 S. E. 805. But the rule as announced in those cases was expressly overruled in *Rubber Co.* v. *Crissey*, 92 W. Va. 419, 114 S. E. 804. In that case, the rule is thus stated: "In a civil suit a judgment will not be rendered *non obstante veredicto* unless the merits of the case, as disclosed by the pleadings, justify such judgment. Where. a conclusion as to the rights of the parties involves a consideration of the evidence, and the court comes to the conclusion that the jury's verdict is not supported thereby, a judgment *non obstante veredicto* will not be rendered, but a new trial will be granted upon motion of the party adversely affected by such verdict." Subsequent cases follow that rule. *Zogg* v. *Oil & Gas Co.*, 94 W. Va. 17, 117 S. E. 620; *Gray* v. *Ry. Co.*, 99 W. Va. 575, 130 S. E. 139.

In *Zinn* v. *Cabot*, 88 W. Va. 118, 106 S. E. 427, at page 124, Judge Ritz, speaking for the Court, very pertinently observed: "If a party desires the conclusive judgment of the court upon the evidence he should demur thereto." Authority cited.

Even under the more liberal rule as typified by the *Weeks* case, *supra*, this Court would not render judgment here for the defendant upon setting aside a verdict for the plaintiff on the ground that it was contrary to the evidence, unless it clearly appeared that the plaintiff could not "in fair probability, upon a new trial show a case for recovery." If it were proper to measure this case by that rule, we could not say that the plaintiff cannot make a different case upon retrial. True, in the light of the two previous trials, it would seem that the probability of plaintiff's being able to make a better case on the third trial is remote, but we do not know.

Though the legislative policy of this commonwealth favors the termination of litigation within due season, it has nevertheless been the legislative contemplation for many decades that litigants may not ordinarily be cut off from a second or third trial merely on the ground that the evidence which they

have produced is insufficient to support a verdict. ''Not more than two new trials shall be granted to the same party in the same cause on the ground that the verdict is contrary to the evidence, either by the trial court or the appellate court, or both.'' Code 1931, 56-6-28. From the beginning of the commonwealth to the adoption of the present Code, this provision of the statute read: ''Not more than two trials shall be granted to the same party in the same cause.''

Trial by jury is a constitutional right. Courts must not interfere with it, except on plainly adequate, legal grounds. A mere surmise that the plaintiff cannot make a better case is not sufficient.

For the foregoing reasons and under the authorities cited, we are of opinion to overrule the motion for entry of judgment here in favor of the defendant *non obstante veredicto* and to remand the case for a new trial.

*Reversed and remanded.*